GRAND RIVER DAM AUTHORITY, a Public Corporation, Appellant,

v.

STATE of Oklahoma and Jan Eric Cartwright, as Attorney General thereof, Appellees.

No. 55755.

Supreme Court of Oklahoma.

May 11, 1982.

---

Daniel W. Allan, Robert W. Sullivan, Jr., Vinita, for appellant.

Jan Eric Cartwright, Atty. Gen., Michael L. Bardrick, Asst. Atty. Gen., for appellees.

OPALA, Justice:

The single first-impression issue in this case is whether the Attorney General, when

issuing formal written opinions, is governed by the Administrative Procedures Act, 75 O.S.Supp.1978 § 301 et seq. We hold that he is not and affirm the ruling of the district court dismissing the action for lack of venue.

Appellant, Grand River Dam Authority, is a conservation and reclamation district. Appellee, the Attorney General, issued Opinion No. 80–51, which construed appellant's authority, powers, rights, duties and obligations under its enabling legislation, 82 O.S.1981 §§ 861–890. Appellant brought an action in the District Court, Craig County, seeking declaratory and injunctive relief and to have Opinion No. 80–51 overruled. Appellee entered a special appearance and plea to jurisdiction and venue, on the ground that venue did not lie in Craig County, but rather in Oklahoma County, under 12 O.S.1971 § 133. Appellant sought to convince the court that the special venue provision in 75 O.S.Supp.1977 § 306 should govern the case. It allows a declaratory judgment suit that deals with an agency rule to be brought in the county in which the plaintiff resides. The district court ruled that the issuance of an opinion is a "quasi-judicial" activity of the attorney general and not a promulgation of a rule and, therefore, that the provisions of 75 O.S.Supp.1977 § 306 of the Administrative Procedures Act [APA] did not apply. The court then granted appellee's motion to dismiss and this appeal followed.

## I.

The Declaratory Judgment Act, 12 O.S. Supp.1974 § 1651 et seq., does not contain any special venue provisions but instead states that "[t]he venue of said action shall be established by existing statutes."[1] Title 12 O.S.1971 § 133 provides in part:

"Actions for the following causes *must* be brought in the county where the cause, or some part thereof arose: ... Second.

An action against a public officer for an act done by him in virtue, or under color, of his office, or for neglect of his official duties." [Emphasis added].

█ The attorney general is a public officer, and the issuance of a formal opinion is an official duty mandated by statute.[2] This duty is performed at the seat of government, the State Capitol, which is situated in Oklahoma County. Under the provisions of 12 O.S.1971 § 133, the venue of the present action lies only in Oklahoma County.

The law governing venue of actions against public officers is well settled in this state. We had occasion to revisit it recently in *Oklahoma Ordnance Works Authority v. District Court of Wagoner County*,[3] where we said that this court "has attempted to follow the intent of the Legislature in localizing venue as to public officers ... An analysis of our decisional law concerning venue of an action against a public officer 'for an act done by him in virtue, or under color, of his office,' under 12 O.S.1971, § 133, discloses that it is the decisional act of the public officer emanating from the county of his official residence that gives rise to the cause of action and establishes venue of an action against such officer; and venue may not be founded upon the place where the decisional act is to be performed or accomplished or where damages may result from the performance or accomplishment of the decisional act."[4] The underlying reasons for the statute were explained by the Supreme Court of Kansas and adopted by this court. "The evident purpose of the statute is to confine actions on account *of the conduct of officers* to the county or counties in which the *act or acts of the officer were done* ... By it proceedings against public officers for official acts are referred to the courts of the county where the acts are done. It is an expression of the purpose of the Legislature to *localize suits against officers.* It relieves

1. 12 O.S.1961 § 1653.

2. See 74 O.S.Supp.1979 § 18b(e), (q); 75 O.S. Supp.1979 § 26.1.

3. Okl., 613 P.2d 746 [1980].

4. *Oklahoma Ordnance Works Authority v. District Court of Wagoner County*, supra note 3 at 750.

**1014**

them from the necessity of deciding between the conflicting orders of courts of different counties. They are amenable only to the courts of the county in which *they are acting.*[5] [Emphasis in original]

 Any decision by a public officer emanates from the county of his official residence and therefore any cause of action connected with that decision arises in that county. This is so even though actions taken pursuant to that decision occurred in another county.[6] Since the attorney general performs his official duties in Oklahoma County, any suit challenging an act occurring by virtue of his public office—here, the issuance of a formal written opinion—must be initiated in Oklahoma County.

## II.

Appellant presses for application to the action of the special venue provisions in § 306 of the APA. That Act provides:

"The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the *county of the residence of the person seeking relief* or, at the option of such person, in the county wherein the rule is sought to be applied, if it is alleged the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff..."[7] [Emphasis added].

Appellant contends that an opinion of the attorney general is a "rule" within the meaning of the APA, and so the present action could be brought in Craig County—the county of appellant's residence. Appellant also argues that, as a specific venue statute, this section should take precedence

over the general venue provisions in 12 O.S. 1971 § 133.

The terms "agency" and "rule", as used in the APA, are defined in the Act itself. Section 301 states "As used in this act: (1) 'Agency' means *any* state board, commission, department, authority, bureau or *officer* authorized by the constitution or statutes to make rules or to formulate orders, except ..."[8] [Emphasis added]. Although several bodies are specifically excepted, the office of the attorney general is not. Therefore, appellant argues, the attorney general must be subject to the provisions of the APA.

The term "rule" is defined as "*any agency statement of general applicability* and future effect that *implements, interprets or prescribes substantive law or policy,* or prescribes the procedure or practice requirements of the agency. The term includes the amendment or repeal of a prior rule but does not include (A) the issuance, renewal or denial of licenses; (B) the approval, disapproval or prescription of rates; (C) statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public; (D) interagency memoranda; or (E) declaratory rulings issued pursuant to Section 308 of this title".[9] [Emphasis added]. This definition appears broad enough to include an attorney's general opinion. The all-inclusive term "statement" doubtless was necessary to prevent an agency from circumventing the procedural requirements of the Act by labeling as "bulletins", "guides" and the like, announcements which, in legal operation and effect, really amount to rules.[10] In addition, an attorney's general opinion certainly can be said to have "general applicability" and "to in-

**5.** *Oklahoma Ordnance Works Authority v. District Court of Wagoner County,* supra note 3 at 750; *Huerter v. Hassig,* 175 Kan. 781, 267 P.2d 532, 535 [1954]. See also *State v. District Court of Bryan County,* Okl., 290 P.2d 413 [1955].

**6.** *Hillcrest Medical Center v. Lee,* Okl., 575 P.2d 971 [1978]; *Office of the Governor—Dept. of Industrial Dev. v. Dalton,* Okl., 560 P.2d 971 [1977]; *State ex rel. Director of Alcoholic Bev-* *erage Control Board v. Smith,* Okl., 519 P.2d 477 [1974].

**7.** 75 O.S.Supp.1977 § 306.

**8.** 75 O.S.Supp.1978 § 301(1).

**9.** 75 O.S.Supp.1978 § 301(2).

**10.** See 1 Cooper, State Administrative Law 108 [1965].

terpret or prescribe substantive law". In the final analysis, the question is whether the legislature intended the attorney's general opinions to be governed by the provisions of this Act.

The legislative history of the APA sheds little light on this problem. Two early drafts specifically excepted from the definition of "agency" the "Attorney General, in respect to his duties in relation to litigation or the furnishing of legal opinions."[11] Both these and numerous other versions failed of passage for one reason or another.[12] The current Act, which was enacted in 1963, is based upon the Revised Model State Administrative Procedure Act of 1961. Neither the Revised Model Act nor its Oklahoma version specifically includes or excludes attorney's general opinions from its provisions.

Similar law in other states also is of little assistance. At present, thirty-six other jurisdictions have acts which define "rule" in terms of "interpreting", "implementing" or "prescribing" substantive law or policy.[13] Of these, only nine specifically exclude attorney's general opinions from this definition.[14] No other court has yet ruled on the precise question whether an attorney's general opinion, when not specifically excluded, is to be governed by the act. Resolution of the issue must be sought *via* an examina-

tion of the nature of such opinions and the statutory provisions governing them.

Although the office of the attorney general is established by the state constitution,[15] the duties and responsibilities are prescribed by statute. Several statutory provisions direct the attorney general to issue advisory opinions to state officials. Title 74 O.S.Supp.1979 § 18b provides that "The duties of the Attorney General as the Chief Law Officer of the state shall be: ... (e) To give his opinion in writing upon all questions of law submitted to him by the Legislature or either branch thereof, or by any state officer, board, commission or department, provided, that the Attorney General shall not furnish opinions to any but district attorneys, the Legislature or either branch thereof, or any other state official, board, commission or department, and to them only upon matters in which they are officially interested ... (q) To respond to any request for an opinion of his office, submitted by a member of the Legislature, regardless of subject matter, by written opinion determinative of the law regarding such subject matter."

Title 75 O.S.Supp.1979 § 26.1 also requires the attorney general to issue opinions upon request: "It shall be the duty of the Attorney General after each session of the Legislature, upon request of the State Au-

11. Proposed Act on Administrative Law Procedures, § 1(1)(d), Report of Committee on Administrative Law and Procedure, 23 OBAJ 1550, 1554 [1952]; id., § 1(1)(e), 25 OBAJ 1941, 1942 [1954].

12. Merrill, Oklahoma's New Administrative Procedure Act, 17 Okl.L.Rev. 1 [1964].

13. Alaska Stat. § 44.62.640(2); Ariz.Rev.Stat. Ann. § 41–1001(7); Ark.Stat.Ann. § 5–701(c); Cal.Govt.Code § 11342(b); Colo.Rev.Stat.Ann. § 24–4–102(15); Conn.Gen.Stat.Ann. § 4–166(7); D.C.Code Ann. § 1–1502(6) ("rule"), § 1–1502(17) ("regulation"); Fla.Stat.Ann. § 120.52(14); Ga.Code Ann. § 3A–102(f); Hawaii Rev.Stat. § 91–1(4); Idaho Code § 67–5201(7); Ill.S.H.A. ch. 127, ¶ 1003.09; Iowa Code Ann. § 17A.2(7)(e); La.Rev.Stat.Ann. § 49:951(6); 5 Me.Rev.Stat.Ann. § 8002.9A; Md.Ann.Code, Art. 41, § 244(b); Mass.Gen. Laws Ann. ch. 30A, § 1(5); Mich.Comp.Laws Ann. § 24.207; Minn.Stat.Ann. § 15.0411, subd. 3; Miss.Code Ann. § 25–43–3(f); Mo. Ann.Stat. § 536.010(4) (Vernon); Mont.Code

Ann. § 2–4–102(10); Neb.Rev.Stat. § 84–901(2); Nev.Rev.Stat. § 233B.038; N.H.Rev. Stat.Ann. 541–A:1(IV); N.Y.McKinney's State Admin. Procedure Act § 102(2)(a); N.C.Gen. Stat. § 150A–10; N.D.Cent.Code § 28–32–01(2); R.I.Gen.Laws Ann. § 42–35–1(g); S.D. Codified Laws Ann. § 1–26–1(7); Tenn.Code Ann. § 4–5–102(7); 3 Vt.Stat.Ann. § 801(9); W.Va.Code Ann. § 29A–1–1(c); Wis.Stat.Ann. § 227.01(9); Wyo.Stat.1977 § 9–4–101(a)(vii).

14. Conn.Gen.Stat.Ann. § 4–166(1) (excludes attorney general from definition of "agency"); Fla.Stat.Ann. § 120.52(14)(b); Iowa Code Ann. § 17A.2(7)(e); Mich.Comp.Laws Ann. § 24.-207(b); Minn.Stat.Ann. § 15.0411, subd. 3(e); Mo.Ann.Stat. § 536.010(4)(e) (Vernon); Mont. Code Ann. § 2–4–102(10)(b); N.D.Cent.Code § 28–32–01(2)(i); S.D.Codified Laws Ann. § 1–26–1(7)(c).

15. Okl.Const., Art. 6 § 1.

ditor and Inspector, or a member of the Legislature, officially to construe any act enacted by said session of the Legislature affecting the authority and duties of officers and departments of the State, the several counties, cities and towns, or school districts. . .".

As the chief law officer of the state, the attorney general has been entrusted with the duty of providing legal guidance to public officers and of advising them on questions of law touching their official duties. Many public officials are not lawyers. Legal assistance often is needed in cases where, at the very least, the functional meaning of the law cannot be ascertained without the application of professional skills. Opinions sought are ordinarily confined to doubtful legal questions which have yet to be passed upon by the courts. The attorney general in this regard does not supplant the courts but rather gives his opinion for public officials' guidance until the questions concerning them are decided by the courts themselves.

In many states, an attorney's general opinion is merely advisory and need not be followed.[16] In this state it has been held that such an opinion is binding on the officials affected by it. The basis rationale for this is that an official who has sought an opinion from the attorney general should, even though not compelled to do so by statute, follow the advice which is given to him.[17] This duty extends only until the public official is relieved thereof by a court of competent jurisdiction or until this court holds otherwise than the attorney's general opinion.[18]

 Because such an opinion is binding upon the official, it may properly be said to be a "rule". Appellee contends that these opinions are not "rules", as defined by the APA, because the only persons required to follow them are state agencies, boards and officers, and not the general citizenry of Oklahoma. As the Comment to the Revised Model Act explains, rules—like statutes—may be of "general applicability" even though they may be of immediate concern only to a single person, provided that the form is general and others who may qualify in the future come within its provisions.[19]

 Appellee also argues that these opinions are not "rules" because "[r]ules . . . in a legal sense, mean laws".[20] It is often said that "rulemaking" is analogous to the legislative process,[21] whereas the issuance of an opinion by the attorney general is—as the district court ruled here—a "quasi-judicial" activity. The use of familiar labels does not help to solve the problem. Attention must be directed, not to the mode by which a "rule" is created, but rather to its *impact* or *effect.* It is the legislative or regulatory *character* of the challenged state action, rather than the nature of the state agency performing the act, which is decisive of the question.[22] Viewed from this perspective, and because it is of "general applicability", an opinion of the attorney general does have the force and effect of a "rule".

**16.** *Council 81, Am. Fed. of State, County and Municipal Emp. v. State Dept. of Finance,* 288 A.2d 453, 455 [Del.Ch.1972]; *Glimpse v. Bexar County,* 160 S.W.2d 996, 998–999 [Tex.Civ. App.1942]; *Senske v. Fairmont & Waseca Canning Co.,* 232 Minn. 350, 45 N.W.2d 640, 646–649 [1951]; *Holcombe v. Mobile County,* 26 Ala.App. 151, 155 So. 638, 639 [1934].

**17.** *Rasure v. Sparks,* 75 Okl. 181, 183 P. 495 [1919].

**18.** *Pan American Petro. Corp. v. Board of Tax-Roll Cor. of Tulsa County,* Okl., 510 P.2d 680 [1973].

**19.** Revised Model Administrative Procedure Act § 1(7), Comment, 14 U.L.A.Civil Proc. 357.

**20.** *State v. Freeman,* Okl., 370 P.2d 307, 309 [1962].

**21.** *State v. Freeman,* supra note 20 at 310; 1 Cooper, State Administrative Law 108 [1965]; 2 Davis, Administrative Law Treatise § 7:8(a) at 36 [2d Ed. 1978].

**22.** See *Tweedy v. Oklahoma Bar Association,* Okl., 624 P.2d 1049 [1981]; *Supreme Court of Virginia v. Consumers Union of the United States,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 [1980]; *Lathrop v. Donohue,* 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191 [1961].

■ The ultimate question for answer before us is whether the issuance of an attorney's general opinion is to be governed by the APA. An examination of the statutory provisions for such opinions and those of the APA leads us to conclude that it is not. Section 302(a) of the APA provides that its requirements are "in addition to other rule-making requirements imposed by law." [23] Although some of the provisions concerning opinions of the attorney general are not necessarily inconsistent with those of the APA,[24] others are so conflicting as to lead to the conclusion that the legislature did not intend the APA to apply to such opinions.

First, § 305 of the APA provides that *any "interested person* may petition an agency requesting the promulgation, amendment or repeal of a rule".[25] [Emphasis added]. "Person" is defined in the APA itself to mean "any individual, partnership, corporation, association, governmental subdivision, or public or private organization of any character other than an agency." [26] Requests for opinions of the attorney general, on the other hand, are specifically limited to the legislature or either of its branches, and to state officers, boards, commissions or departments.[27] The attorney general is not authorized to issue written opinions to private citizens, corporations, associations or other similar organizations.

Secondly, provided it "substantially" complies with the procedural requirements in § 303 of the APA,[28] an agency may adopt, amend or repeal a rule on its own initiative. The attorney general is authorized to issue an opinion on questions of law only at the *request* of certain public officials.[29] He does so, not in the exercise of any power inherent in the office to make "rules" or law, but in fulfillment of his duty to give legal advice to those who administer the government of the state. It has never been held, nor is it suggested, that the attorney general may issue formal written opinions or settle questions of law on his own initiative.

Third, the 1978 version of § 308(f) of the APA provided that agency rules could be promulgated only while the legislature was in session, unless there was imminent peril to the public health, safety or welfare.[30] Attorney's general opinions are not so limited. To the contrary, 75 O.S.Supp.1979 § 26.1 specifically provides that the attorney general shall construe certain laws enacted during a legislative session *after* the session has ended. Moreover, although the other sections dealing with such opinions are not so explicit, there would be no warrant for requiring the attorney general to wait until the next legislative session before he could issue an advisory opinion to state officials on problems that arose between sessions.

Fourth, the 1978 version of § 308(d) of the APA [31] provided that an agency rule was subject to a "legislative veto" by the adoption of a resolution to that effect. It has never been suggested that the legislature, by a simple vote of disapproval by one house, could overturn an opinion of the attorney general. To the contrary, a public

---

**23.** 75 O.S.1971 § 302(a).

**24.** For example, 74 O.S.Supp.1978 § 20(A) provides for annual publication of all written opinions promulgated by the Attorney General; and 74 O.S.Supp.1979 § 18b(*l*) requires the Attorney General to keep and file copies of all opinions and to index them according to the subject matter and section of the law construed. These requirements are not necessarily inconsistent with the publication and filing requirements of the APA, 75 O.S.1971 §§ 302–305, 308.

**25.** 75 O.S.1971 § 305.

**26.** 75 O.S.Supp.1978 § 301(9).

**27.** 74 O.S.Supp.1979 § 18b(e), (q); 75 O.S. Supp.1979 § 26.1.

**28.** 75 O.S.1971 § 303(c).

**29.** See 74 O.S.Supp.1979 § 18b(e), (q); 75 O.S. Supp.1979 § 26.1.

**30.** 75 O.S.Supp.1978 § 308(f). This section was amended in 1981 and the subsection in question was renumbered § 308(d).

**31.** 75 O.S.Supp.1978 § 308(d). This section was amended in 1981 and renumbered as § 308(b).

**1018**

official. with notice thereof is obligated to follow the opinion of the attorney general "until relieved of such duty by a *court* of competent jurisdiction or until *this Court* should hold otherwise." [32] [Emphasis added].

Lastly, § 307 of the APA provides for "declaratory rulings as to the applicability of any rule or order of the agency." [33] Such a ruling is intended to be an informal declaration as to the applicability of a rule or order in an individual case. It allows an agency to give a definitive response to a simple question about an ambiguity in the law where this is necessary for an individual to ascertain his legal obligations and to structure his affairs accordingly. Because the procedures for issuing such rulings should be reasonably simple and expeditious, these are specifically excepted from the definition of a "rule" by § 301(2)(E) of the APA. [34] Although the attorney's general opinion does resemble an agency's declaratory ruling, there is no explicit or implicit provision in the APA which gives it that effect. Were *any* such opinion treated as functionally equivalent to a § 307 declaratory ruling, an implicit sanction would be given to two equally untenable notions. One of these is that "rulemaking"—in the APA sense—is central to the opinion-rendering function of the attorney general and the other that every subject creates a legal scenario for successive opinions—the initial one that formulates the rule and those that follow which "declare" upon its applicability to any proposed course of official action. The first of these notions stands discredited

earlier in this opinion; the second is a patent absurdity which the legislature most certainly did not intend.

■ The probed conflicts lead to two possible conclusions. The first is that the issuance of the opinions by the attorney general is governed by the APA *except* to the extent that other statutory provisions are inconsistent with that act. Such a conclusion would defeat a primary purpose of the APA, viz., to provide a *uniform* system of regulations concerning administrative procedures in and before all state rule-making authorities. [35] Moreover, the APA itself explicitly repealed all other statutory provisions which were inconsistent with it. [36] The other possible conclusion—and the one we believe is the more reasonable—is that the attorney general is not to be subject to the provisions of the APA when issuing written opinions. This conclusion is strengthened by the fact that, although the APA was enacted in 1963 in what is substantially its present form, the provisions in 74 O.S.1971 § 18b and 75 O.S.1971 § 26.1 were re-enacted as recently as 1979. [37] Where two or more enactments are involved, the primary object is to determine the latest expression of the legislative will. [38]

■ The cardinal rule for construction of statutes is to ascertain the intention of the legislature by consideration of the statutory language. Ordinarily, exceptions should not be read into the statute which are not made by the legislative body. [39] In

---

**32.** *Pan American Petro. Corp. v. Board of Tax-Roll Cor. of Tulsa County,* supra note 18 at 681; *State v. District Court of Mayes County,* Okl., 440 P.2d 700 [1968].

**33.** 75 O.S.1971 § 307.

**34.** 75 O.S.Supp.1978 § 301(2)(E). It should be noted that, although this subsection refers to "declaratory rulings issued pursuant to Section *308* of this title", this is obviously a mistake in drafting, since declaratory rulings are treated in § 307. The mistake probably is due to the fact that the original version spoke of "declaratory rulings issued pursuant to *Section 8*", which is the corresponding section in the 1961 Revised Model Act, and that renumbering did

not reflect properly amendments made when the APA was enacted in this state.

**35.** *Trask v. Johnson,* Okl., 452 P.2d 575 [1969].

**36.** 75 O.S.Supp.1963 § 327.

**37.** The 1979 amendment to 75 O.S.1971 § 26.1 only changed "State Examiner and Inspector" to "State Auditor and Inspector". The amendments to 74 O.S.Supp.1976 § 18b changed "county attorneys" in subsection (e) to "district attorneys" and added new subsection (q).

**38.** *Trask v. Johnson,* supra note 35 at 577.

**39.** *Udall v. Udall,* Okl., 613 P.2d 742 [1980].

*Application of Oklahoma Turnpike Authority,*[40] we held that the Turnpike Authority was not subject to the provisions of the APA, even though it was not specifically excepted by the act, because the Oklahoma Turnpike Act[41] evidenced a legislative intent to exclude the Authority from the provisions of that act.[42] Although the intent may not have been expressed as explicitly in this case, no other reasonable construction of the statutes involved here can be supported. The legislature will not be presumed to have intended an absurd result,[43] and a statutory construction which would lead to an absurdity will be avoided if this can be done without violating the legislative intent.[44] Whenever it is possible to construe two acts by giving effect to both without doing violence to either, such construction is preferred over one that may be productive of conflict between them.[45]

### III.

 Appellant argues, in the alternative, that an opinion of the attorney general should be considered an "order" resulting from the "individual proceedings" provided for by the APA, 75 O.S.1971 § 309. An affirmative determination would be of no help to appellant. First, the declaratory judgment provision in § 306 of the APA applies to a determination of the "validity or applicability of a *rule*," not of an "order". [Emphasis supplied]. Second, § 318 of the APA, which pertains to judicial review of a final order in an "individual proceeding", provides that "proceedings for review shall be instituted by filing a petition in the district court ... within thirty (30) days after appellant is notified of the order..."[46]. Since Opinion No. 80–51 was rendered on May 16, 1980 and appellant did not file its petition in the district court until

July 9, 1980, a determination that such opinion was an order within the meaning of the APA would mean that appellant was barred from bringing this action. Moreover, an opinion could not be considered an "order" because under § 312 of the APA an order has to include findings of fact and conclusions of law. An attorney's general opinion need not make findings of fact as it does not deal with disputed facts. It gives only conclusions of law.

AFFIRMED.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER, DOOLIN, HARGRAVE and WILSON, JJ., concur.

SIMMS, J., concurs in result.

**40.** Okl., 416 P.2d 860 [1966].

**41.** Formerly 69 O.S.1961 §§ 651–687. This Act was repealed by the Highway Code of 1968 and the current provisions are codified in 69 O.S. 1968 § 1701 et seq.

**42.** *Application of Oklahoma Turnpike Authority,* supra note 40 at 868.

**43.** *AMF Tubescope Co. v. Hatchel,* Okl., 547 P.2d 374 [1976].

**44.** *Texas Cty. Irrigation v. Cities Service Oil Co.,* Okl., 570 P.2d 49 [1977].

**45.** *AMF Tubescope Co. v. Hatchel,* supra note 43 at 379.

**46.** 75 O.S.Supp.1977 § 318(2).