**ALBRIGHT TITLE & TRUST COMPANY, of Newkirk, Oklahoma, Appellant,**

v.

**The BANKING BOARD OF the STATE OF OKLAHOMA, comprised of Emory S. Crowe, Don B. Donaldson, John T. Hannah, Loretta Y. Jackson, George W. Lowry and Chairman R.Y. Empie, Appellees.**

**No. 63226.**

Supreme Court of Oklahoma.

May 5, 1987.

---

D. Kent Myers, Anton J. Rupert, Crowe & Dunlevy, Oklahoma City, for appellant.

Mary Beth Guard, State Banking Dept., Oklahoma City, for appellees.

ALMA WILSON, Justice:

The issue in this case is whether a trust company incorporated prior to the enactment of the Oklahoma Banking Code of 1965 is allowed to receive general deposits, a power which is not authorized by the Banking Code.[1] Albright Title & Trust Company [Albright], the appellant, was incorporated in 1916. Albright's articles of incorporation state as one of its purposes "To establish and carry on within said corporation a general banking and savings department and to receive and disburse monies or deposits in accordance with the banking laws of the State of Oklahoma...." Such activity was permitted under prior law. See, 6 O.S.1961 § 294. When the Banking Code of 1965 was enacted, trust companies were no longer authorized to accept general deposits. See, 6 O.S.1981 § 1001(A). Albright, however, accepted general deposits subsequent to the enactment of the Banking Code, and when examined by the Oklahoma Banking Department, the general deposit activities were reported on a form used for reporting the general deposit activities of banks. A separate form was used for Albright's trust activities. The Oklahoma Banking Department examination report of September 30, 1983, does not cite Albright for any violation of the Banking Code because of a

---

1. 6 O.S.1981 § 1001.

receipt of general deposits even though two pages of the form lists all "Violations of Laws and Regulations."

On February 21, 1984, Albright filed a petition with the Oklahoma State Banking Department to bring before the State Banking Board a request for an order declaring that Albright has the power to receive general deposits and ordering the Department to so certify to the Federal Deposit Insurance Corporation. Albright needed this certification to obtain FDIC insurance. The Banking Board in a decision dated October 12, 1984, denied the request for such an order, and ordered that Albright was restricted to the rights and powers granted to trust companies under the Banking Code, and further ordered the Department to examine Albright and notify the Board if general deposits are taken. Albright appealed that order to this Court.[2]

■ Whether or not the Banking Board's order was correct depends upon an issue of law, and therefore, its decision is subject to a determination by this Court as to whether or not it has misapprehended or grossly misapplied the law. *Citizens Security Bank & Trust v. Banking Board*, 627 P.2d 423, 426 (Okl.1981).

The correctness of the Board's decision rested upon the construction of 6 O.S.1981 § 104(A)[3] and the section is quoted in the Board's conclusions of law. However, this section had been amended eleven days before the order was signed and now provides:

> Section 104. The certificates, permits and charters of state banks and trust companies heretofore organized under the laws of the state and existing before August 31, 1965, shall continue in full force and effect. All such state banks now or hereafter doing business in this state, shall from August 31, 1965, be subject to the provisions and requirements of this Code in every particular as if organized under this act.

1984 Okla.Sess.Laws, ch. 133, § 1 (now 6 O.S.Supp.1986, § 104(A)).

In the 1984 amendment there is a material revision, as the phrase "Any state bank or trust company availing itself of or accepting the benefits of this Code...." represents a contingent action which has the consequence of "shall be subject to the provisions and requirements of this Code in every particular ... as if organized under this act." Because the 1984 amendment deletes the contingency, we must infer that the legislature intends that all trust companies, with no exceptions, be subject to the provisions and requirements of this Code in every particular as if organized under this act. No provision of this Code authorizes trust companies to receive general deposits.[4]

---

**2.** 1982 Okla.Sess.Laws, ch. 204, § 1 (now 6 O.S. Supp.1986, § 207(A)) provides that final orders of the Banking Board may be appealed to the Supreme Court of Oklahoma by any party directly affected and showing aggrievement by the order.

**3.** The statute provided:

A. The certificates, permits and charters of state banks and trust companies heretofore organized under the laws of the state and existing before August 31, 1965, shall continue in full force and effect. All such state banks and trust companies, and, to the extent applicable, all national banks now or hereafter doing business in this state, shall from August 31, 1965, be subject to the provisions of this Code. Any state bank or trust company availing itself of or accepting the benefits of this Code shall be subject to the provisions and requirements of this Code in every particular, save as to capital structure requirements set forth in Section 302, as if organized under this act.

**4.** *Compare* 6 O.S.1981 § 1001(A)(1), which provides:

A. All corporate trust companies now existing or hereafter created shall have the following powers:

(1) To receive deposits of trust moneys; to receive upon deposit for safekeeping personal property of every description; to guarantee special deposits; and to own or control safety vaults and rent the boxes therein.

*with* 6 O.S.1961 § 294 which provided:

§ 294. Purposes for which trust companies may be created.—Corporations may be created under this article for any one or more of the following purposes:

First, To receive money in trust or on general deposit with or without interest, as may be agreed upon and to accept and receive savings accounts and the payment to them or their order of deposits made by minors shall be binding on them; to receive upon deposit for safe keeping personal property of every description; to guarantee special deposits, and to own or control safety vaults and rent the boxes therein.

Albright argues that 6 O.S.1981 § 503, which became effective May 11, 1977, allows the inference that the legislature recognized the right of pre-Code trust companies to accept general deposits. The statute provides:

Nothing contained in this Code shall authorize trust companies, covered by or eligible for insurance coverage by the Federal Deposit Insurance Corporation, to establish branch offices within this state. As used in this section, "branch office" includes, but is not limited to, any additional agency, office or other facility located within this state at which business is conducted. Provided, however, this section shall not be effective as to any such "branch office" in existence at the time and date of the enactment hereof, nor shall it be so construed as to prohibit the establishment of agents or agencies for the sole purpose of conducting the business of title insurance or abstracting.

Albright contends that because the Federal Deposit Insurance Corporation will only insure corporations which, among other requirements, accept general deposits, and because the legislature did not desire such trust companies to unfairly compete with banks, this statute was enacted to keep such trust companies from branching. But because § 104 was revised in 1984, when a substantial change was made in the statute; § 503, which was enacted earlier, does not aid in the construction of § 104. "Where two or more enactments are involved, the primary object is to determine the latest expression of the legislative will." *Grand River Dam Authority v. State*, 645 P.2d 1011 (Okl.1982).

Finally, Albright maintains that the phrase in § 104(A) that the certificates shall continue "in full force and effect", and the final sentence of § 104(A) which provides that the trust companies organized prior to August 31, 1965, shall be subject to the provisions and requirements of the 1965 Code in every particular, can only be correctly construed to mean that such pre-Code trust companies retain all of the powers which their charters provide, but in all other matters, the companies will be regulated under the 1965 Code. We are unpersuaded by Albright's argument. Given the strong language of § 104(A) making pre-Code trust companies subject to the provisions and requirements of the Code "in every particular", we find that the legislature intends that those companies be subject to all of the Code, including the provisions of § 1001, which do not allow trust companies to accept general deposits. At the date of enactment § 1001(A) read, *"All* corporate trust companies *now existing* or hereafter created shall have the following powers...."* [Emphasis added.]

The context of § 104 is concerned with the registration of banks, bank holding companies, trust companies, or any business engaged in bank or trust-related activities. We construe the phrase in § 104(A), that "The certificates, permits, and charters of state banks and trust companies heretofore organized under the laws of the state and existing before August 31, 1965, shall continue in full force and effect," to mean that the charters are fully effective for registration purposes, but the last sentence makes clear that those corporations must follow the requirements of the Code "in every particular."

The decision of the Banking Board is accordingly affirmed.

DOOLIN, C.J., and HODGES, LAVENDER, SIMMS, OPALA and KAUGER, JJ., concur.

SUMMERS, J., concurs in result.

HARGRAVE, V.C.J., dissents.