OSCN Found Document:SMITH v. SHELTER MUTUAL INSURANCE CO.

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 SMITH v. SHELTER MUTUAL INSURANCE CO.
2014 OK CIV APP 42
Case Number: 111356
Decided: 12/31/2013
Mandate Issued: 04/29/2014
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2014 OK CIV APP 42, __ P.3d __

JUDY ANN SMITH, as personal representative of the estate of Patty Sue Yeater, deceased, Plaintiff/Appellee,
v.
SHELTER MUTUAL INSURANCE COMPANY, Defendant/Appellant,
and
DANNY RAY BREEDEN and DOYLE DAVIS, Defendants.

APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY, OKLAHOMA

HONORABLE LISA DAVIS, TRIAL JUDGE

REVERSED AND REMANDED WITH DIRECTIONS

George Mullican, Christopher Wolek, Diane M. Black, GIBBS, ARMSTRONG, BOROCHOFF, MULLICAN & HART, P.C., Tulsa, Oklahoma, for Plaintiff/Appellee
David B. Donchin, Glen Mullins, R. Ryan Deligans, DURBIN, LARIMORE & BIALICK, Oklahoma City, Oklahoma, for Defendant/Appellant

DEBORAH B. BARNES, VICE-CHIEF JUDGE:

¶1 Defendant/Appellant Shelter Mutual Insurance Company (Shelter) appeals the trial court's Order granting summary judgment in favor of Plaintiff/Appellee Judy Ann Smith (Smith), as personal representative of the estate of Patty Sue Yeater, deceased. This case arises from an automobile accident, and the primary issue presented on appeal is whether the minimum limit of liability insurance coverage is the higher amount set forth in the Motor Carrier Act of 1995 (the MCA), 47 O.S.2011 §§ 230.21-230.33, or whether it is the lower amount set forth in 47 O.S.2011 § 7-324. Based on our review of the record and applicable law, we conclude it is the lower amount and, therefore, we reverse the Order granting summary judgment to Smith, and remand with directions to the trial court to enter an order granting summary judgment to Shelter.

BACKGROUND

¶2 Smith filed her second amended petition in July 2011, alleging her mother, Patty Sue Yeater (Decedent), was killed when, on an evening in December 2009, the vehicle she was driving collided with a dump truck (the truck) owned by Doyle Davis (Davis), and operated at the time by Danny Ray Breeden (Breeden). Smith alleged Decedent was driving in a lawful manner at the time of the accident, but that the truck was parked partially on the roadway without brake lights, warning lights, or other warning device to alert approaching traffic of its presence.

¶3 Smith asserted various negligence theories against Davis and Breeden, and asserted the truck was insured by Shelter at the time of the collision and that Shelter is obligated to pay for any damages caused by the negligence of Davis and Breeden. Smith further alleged the truck is subject to the MCA, and sought a "declaratory judgment . . . establishing that the minimum limits of liability insurance coverage mandated by the financial responsibility law that applies to this accident are set by . . . § 230.30 in the amount of $350,000.00."[1]

¶4 In November 2011, Shelter filed an answer in which it admitted the truck was owned by Davis and that, on the evening in question, it was parked partially on the roadway while operated by Breeden. Shelter further admitted that at the time of the collision the truck was insured by Shelter. Shelter otherwise denied Smith's allegations, including the allegation that it is obligated to pay for damages caused by the negligence of Davis and Breeden. In addition, Shelter asserted that legitimate disputes exist between the parties "as to the amount of insurance coverage afforded under the Shelter insurance policy," and "as to the classification of the vehicle involved in the accident . . . ."[2]

¶5 Smith settled her claims against Davis and Breeden and dismissed with prejudice her cause of action against them, but Shelter remained a defendant. Smith subsequently filed a motion for summary judgment against Shelter, to which Shelter filed a response, and Smith a reply. In its response, and at the hearing on the motion for summary judgment, Shelter agreed it is to pay up to the amount allowable pursuant to the insurance policy.[3] However, the parties disagree "on the issue of the required liability limits for the [truck] under Oklahoma law . . . ."

¶6 The insurance policy provides that, "[r]egardless of the limit of liability shown in the Declarations," when an accident occurs while the truck is being operated by an individual who merely has permission or general consent to use it, the limits of liability "will be the minimum limits mandated by any applicable uninsured motorist insurance law or financial responsibility law."[4] It is undisputed Breeden is not a named insured under the policy but was operating the truck with permission[5] at the time of the collision. Smith argues the applicable minimum limit of liability insurance coverage is found in the MCA, and is $350,000. Shelter argues the MCA does not apply because Breeden was neither a motor carrier nor a private carrier, and that the minimum limits of liability insurance coverage are $25,000 per person and $50,000 per accident pursuant to 47 O.S.2011 § 7-324 for motor vehicles generally.[6]

¶7 At the hearing on the motion for summary judgment, the trial court explained that although it agreed with Shelter that Breeden was not a "motor carrier" pursuant to the MCA, he "fit under the private carrier definition."[7] Accordingly, the trial court entered an Order, filed on November 27, 2012, granting summary judgment in favor of Smith. In the Order, the trial court "[found] that the only issue in the case is the limits of insurance under the policy," and found "the limits of insurance in the higher amount as sought by [Smith] should be imposed as a matter of law . . . ." The trial court stated, "because the only issue in the case was related to a dispute on the limits of insurance, this is a final judgment." From the trial court's Order, Shelter appeals.

STANDARD OF REVIEW

¶8 "Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. Therefore, an order that grants summary relief disposes solely of legal questions and is reviewable by a de novo standard. Residential Funding Real Estate Holdings, LLC v. Adams, 2012 OK 49, ¶ 17, 279 P.3d 788, 793-94. See Kluver v. Weatherford Hosp. Auth., 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084 ("Issues of law are reviewable by a de novo standard and an appellate court claims for itself plenary[,] independent and non-deferential authority to reexamine a trial court's legal rulings."). We will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact, and all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party. Carmichael, ¶ 2, 914 P.2d at 1053.

¶9 Statutory construction presents a question of law, State v. Tate, 2012 OK 31, ¶ 7, 276 P.3d 1017, 1020, and, therefore, calls "for a legal conclusion to be governed by a de novo standard of appellate review. When reexamining a trial court's legal rulings, an appellate court exercises plenary, independent and non-deferential authority," State v. Native Wholesale Supply, 2010 OK 58, ¶ 9, 237 P.3d 199, 205 (footnotes omitted). "The fundamental rule of statutory construction is to ascertain the intent of the legislature. Words and phrases of a statute are to be understood and used not in an abstract sense, but with due regard for context, and they must harmonize with other sections of the Act." Tate, ¶ 7, 276 P.3d at 1020 (citation omitted).

ANALYSIS

¶10 In the MCA, it is

declared that it is necessary in the public interest to regulate transportation by motor carriers and private carriers in such manner as to recognize the need to require all motor carriers and private carriers to have adequate insurance; for motor carriers and private carriers to provide service in a safe and efficient manner; and to establish that the operations of motor carriers and private carriers will not have a detrimental impact on the environment.

47 O.S.2011 § 230.22(A). "The provisions of the [MCA], except as hereinafter specifically limited, shall apply to the transportation of passengers or property by motor carriers and private carriers, except motor carriers of household goods and used emigrant movables, over public highways of this state . . . ." Id. § 230.22(C).

¶11 Of course, not all persons engaged in transporting persons or property on public highways are subject to regulation pursuant to the MCA. A "motor carrier" is "any person, except a carrier of household goods or used emigrant movables, operating upon any public highway for the transportation of passengers or property for compensation or for hire or for commercial purposes, and not operating exclusively within the limits of an incorporated city or town within this state." Id. § 230.23(6).[8]

¶12 A "private carrier" is defined as "any person engaged in transportation upon public highways, of persons or property, or both, but not as a motor carrier, and includes any person who transports property by motor vehicle where such transportation is incidental to or in furtherance of any commercial enterprise of such person, other than transportation[.]" Id. § 230.23(9). Smith argues, and the trial court agreed, that any person transporting persons or property on public highways is a private carrier so long as he/she is not a motor carrier, and so long as the vehicle he/she is operating exceeds the 26,000-pound weight limitation discussed below. In effect, Smith argues that the word "includes," as used in this provision, signifies that what follows it is but a subset of what is meant by "private carrier," and that this subset in no way circumscribes the class of persons who may be regulated as private carriers.

¶13 We disagree with Smith's argument. Where the meaning of a statutory provision is uncertain, it is to be given a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent. Grand River Dam Auth. v. State, 1982 OK 60, ¶ 25, 645 P.2d 1011, 1019. Further, the Legislature will not be presumed to have done a vain and useless act in the promulgation of a statute, In re Sup. Ct. Adjudication, 1979 OK 103, ¶ 6, 597 P.2d 1208, 1210, nor will an inept or incorrect choice of words be applied or construed in a manner to defeat the real or obvious purpose of a legislative enactment, Wooten v. Hall, 1968 OK 90, ¶ 6, 442 P.2d 334, 336.

¶14 The interpretation proffered by Smith would render that portion of the definition of "private carrier" describing "transportation . . . incidental to or in furtherance of any commercial enterprise of such person, other than transportation," superfluous. Although the Legislature's choice of the word "includes" to introduce this portion of the definition of private carrier is perhaps less than ideal,[9] we decline to interpret this portion in a manner that would render it entirely vain and useless. Rather, we conclude that, pursuant to the above principles of statutory interpretation, and pursuant to the doctrine of ejusdem generis,[10] the specific enumeration of transportation undertaken "incidental to," and "in furtherance of" a commercial enterprise, limits the broad class of "any person engaged in transportation upon public highways, of persons or property, or both, but not as a motor carrier," to the class of non-motor-carrier transportation of persons or property on public highways that is related in some meaningful way to a commercial enterprise.

¶15 In addition, only "private carriers operating vehicles having a gross registered weight of greater than 26,000 pounds and not operating exclusively within the limits of an incorporated city or town in this state" are regulated under the MCA. 47 O.S.2011 § 230.24(A)(1).

¶16 The Oklahoma Administrative Code (OAC) similarly provides:

No intrastate private carrier, utilizing equipment with an actual weight, registered weight or combination weight or GVWR/GCWR in excess of 26,000 pounds when the trailer's GVWR is greater than 10,000 pounds, shall operate upon any street, road, public highway or dedicated public thoroughfare of this State for the transportation of property without first obtaining from the Commission a license as provided in this Section.

OAC 165:30-15-4(a). See Mize v. Liberty Mut. Ins. Co., 393 F. SupP.2d 1223, 1227 (W.D. Okla. 2005) (private carriers weighing 26,000 pounds or less are not subject to regulation under the MCA, but the 26,000-pound limitation does not apply to motor carriers).

¶17 Regarding the weight of the vehicle, Smith asserts it is undisputed the truck "had a GVWR of 27,500 pounds, as listed by the manufacturer."[11] In support, Smith has attached a photograph of a vehicle information plate with the same vehicle identification number as the one typed in the traffic collision report.[12] The photograph clearly provides: "Gross Vehicle Weight For This Vehicle 27500." Shelter does not dispute the fact that the truck "had a GVWR of 27,500 pounds, as listed by the manufacturer," and we conclude there is no genuine dispute that the truck had a "gross registered weight of greater than 26,000 pounds . . . ." 47 O.S.2011 § 230.24(A)(1).[13]

¶18 However, Breeden's activity was not incidental to or in furtherance of a "commercial enterprise," which is defined in the MCA as "all undertakings entered into for private gain or compensation, including all industrial pursuits, whether the undertakings involve the handling of or dealing in commodities for sale or otherwise." Id. § 230.23(12). It is undisputed that Breeden was using the truck to transport shingles from his home to a dump site as part of putting a new roof on his own home.[14] Although Breeden may have saved money on his roofing bill by transporting his own shingles, we conclude the transportation of his own shingles to the dump site was not incidental to, in furtherance of, or otherwise meaningfully related to a commercial enterprise for private gain or compensation as intended by the MCA. Because Breeden was neither a motor carrier nor a private carrier at the time of the accident, the MCA is inapplicable. Consequently, the minimum limit of liability insurance coverage is the lesser amount pursuant to § 7-324 for motor vehicles generally

CONCLUSION

¶19 The insurance policy at issue in this case provides that, "regardless of the limit of liability shown in the Declarations," when an accident occurs while the vehicle is being operated by an individual who merely has permission or general consent to use it, as occurred here, the limits of liability "will be the minimum limits mandated by any applicable . . . financial responsibility law." Based on our review of the record and applicable law, we conclude the MCA does not apply because Breeden was neither a motor carrier nor a private carrier at the time of the accident. Therefore, the applicable minimum limit of liability insurance coverage is found in 47 O.S.2011 § 7-324 for motor vehicles generally. Consequently, we reverse the trial court's Order, and remand this case with directions to the trial court to enter an order granting summary judgment to Shelter.

¶20 REVERSED AND REMANDED WITH DIRECTIONS.

FISCHER, P.J., and WISEMAN, J., concur.

FOOTNOTES

[1] R. at Tab 3, p. 8.

[2] R. at Tab 7, pp. 2-3.

[3] Smith states in her summary judgment motion that this agreement between Smith and Shelter occurred "[a]s part of the settlement" with Davis and Breeden. R. at Tab 8, p. 1.

[4] Supp. R. at Exhibit D (p. 20 of the policy).

[5] Smith asserts in her motion for summary judgment that Breeden had permission to use the truck, and Shelter admits Davis "had no objection to his son Steve's best friend [Breeden] using the truck for his own personal use." R. at Tab 9, p. 9.

[6] Shelter states in its summary of the case in the petition in error that "[t]he sole issue is whether the minimum financial responsibility limits on [the truck] . . . are $25,000/50,000 as Shelter contended or $350,000 as [Smith] contended."

[7] R. at Tab 13, p. 13.

[8] Section 230.23(6) further provides:

[T]he provisions of the [MCA] shall not apply to the following vehicles and equipment when such vehicles and equipment are being used for the following:

a. taxicabs and bus companies engaged in the transportation of passengers and their baggage, not operated between two or more cities and towns, when duly licensed by a municipal corporation in which they might be doing business,

b. any person or governmental authority furnishing transportation for school children to and from public schools or to and from public-school-related extracurricular activities under contract with, and sponsored by, a public school board; provided, that motor vehicles and equipment operated for the purposes shall qualify in all respects for the transportation of school children under the Oklahoma School Code and the rules of the State Board of Education adopted pursuant thereto.

c. transport trucks transporting liquefied petroleum gases intrastate which are owned or operated by a person subject to and licensed by the Oklahoma Liquefied Petroleum Gas Regulation Act, and

d. transportation of livestock and farm products in the raw state, when any of such commodities move from farm to market or from market to farm on a vehicle or on vehicles owned and operated by a bona fide farmer not engaged in motor vehicle transportation on a commercial scale[.]

[9] The word including "is sometimes misused for namely. But it should not be used to introduce an exhaustive list, for it implies that the list is only partial." Bryan A. Garner, A Dictionary of Modern Legal Usage 431-32 (2d ed. 1995).

[10] Ejusdem generis is "[a] canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." Black's Law Dictionary (9th ed. 2009). The Oklahoma Supreme Court has stated as follows:

We have held that the doctrine of ejusdem generis applies when (1) a statute contains a specific enumeration; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration is made, usually following the enumeration; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires. In other words, the statute must display a syntactical relationship of the specific to the general, with a series of specific words defining a class followed (or sometimes preceded) by a catchall referent that determines "how extensively the act . . . [is] intended or should reasonably be understood to apply."

Broadway Clinic v. Liberty Mut. Ins. Co., 2006 OK 29, ¶ 19, 139 P.3d 873, 878 (footnotes omitted).

[11] R. at Tab 8, p. 4.

[12] See Supp. R. at Exhibit E (corrected), and R. at Tab 8, Exhibit A.

[13] Although Shelter does not dispute this fact in its response to the motion for summary judgment, but merely asserts it is irrelevant, we note that in Davis's deposition, he answers in the negative when asked, "Would you agree with me that the gross vehicle weight rating of [the truck] was in excess of 26,000 pounds?" However, we conclude Davis's opinion in his deposition that the "gross vehicle weight rating" of the truck is not in excess of 26,000 pounds does not create a genuine dispute of fact on the issue of whether the gross registered weight of the truck was greater than 26,000 pounds because the fact is supported by the uncontested vehicle information plate of the truck. That is, based on the uncontested vehicle information plate, we conclude there is no genuine dispute that the truck has a "gross registered weight of greater than 26,000 pounds" pursuant to § 230.24(A)(1). The evidentiary materials introduced indicate there is no "substantial controversy as to [this] material fact and that this fact is in the movant's favor." Ross v. City of Shawnee, 1984 OK 43, ¶ 7, 683 P.2d 535, 536. In addition, because we conclude, infra, that Breeden was not a private carrier because his activity was not connected to a commercial purpose, we need not determine whether a dispute exists as to whether the activity was exclusively within the limits of an incorporated city or town pursuant to § 230.24.

[14] Shelter notes "Breeden was personally going to be responsible for removing the debris of his old shingles off of his property. He was borrowing the truck from his best friend Steve to use for his own personal use in getting the shingles from his property to a dump site," citing Breeden's deposition. R. at Tab 9, p. 9. Breeden states in his deposition, "I was reroofing my house" and "needed something to put [the shingles] in and haul them to the dump with." R. at Tab 8, Exhibit G, pp. 19-20. It is also undisputed the truck was not operated across state lines, was not used for farming operations, and was not tagged as a farm vehicle.






 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Supreme Court Cases Cite
Name
Level 1993 OK 85, 859 P.2d 1081, 64 OBJ 2009, Kluver v. Weatherford Hosp. Authority
Discussed 1968 OK 90, 442 P.2d 334, WOOTEN v. HALL
Discussed 2006 OK 29, 139 P.3d 873, BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.
Discussed 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed 2010 OK 58, 237 P.3d 199, STATE ex rel. EDMONDSON v. NATIVE WHOLESALE SUPPLY
Discussed 2012 OK 31, 276 P.3d 1017, STATE v. TATE
Discussed 2012 OK 49, 279 P.3d 788, RESIDENTIAL FUNDING REAL ESTATE HOLDINGS, LLC v. ADAMS
Discussed 1979 OK 103, 597 P.2d 1208, IN RE SUPREME COURT ADJUDICATION, ETC.
Discussed 1982 OK 60, 645 P.2d 1011, Grand River Dam Authority v. State
Discussed 1984 OK 43, 683 P.2d 535, Ross v. City of Shawnee
Discussed
Title 47. Motor Vehicles Cite
Name
Level 47 O.S. 230.24, Powers and Duties of Corporation Commission
Discussed 47 O.S. 7-324, Motor Vehicle Liability Policies - Contents and Coverages
Discussed at Length 47 O.S. 230.21, Short Title
Cited 47 O.S. 230.22, Necessity to Regulate Transportation by Motor Carriers and Private Carriers - Revocation of Existing Intrastate Certificates and Permits - Applicability of Provisions - Construction of Act
Cited