WILLIAM JAY SCHIEFFELIN, Appellant, *v.* CHARLES L. CRAIG, as Comptroller of the City of New York, ALFRED E. SMITH, as President of the Board of Aldermen of the City of New York, and Others, Respondents.

First Department, May 3, 1918.

Municipal corporations — street opening, city of New York — taxpayer's suit to restrain raising of money by taxation — charter construed — provisions relating to raising of money by issuance of stock does not relate to expense of street opening — city's share of cost of Queens boulevard to be raised by taxation — when taxpayer's action does not lie.

The suit of a taxpayer to restrain the comptroller and president of the board of aldermen of the city of New York and others from raising moneys by taxation for the city's share of the cost of opening and extending the Queens boulevard in the borough of Queens, should not be dismissed upon the ground that the question is academic because the acts sought to be restrained have been performed by the defendants, if in fact all things necessary to be done to perfect the tax levy have not been done and the matter involved is severable from the other provisions of the annual tax levy ordinance.

*It seems,* that section 176 of the charter of the city of New York relating to the issuance and sale of corporate stock to raise money to pay assessments imposed upon the city and expenses relates to the acquisition of lands for public purposes other than for streets, avenues and parks, and other uses which have been provided for by the preceding sections of the act.

First Department, May, 1918.            [Vol. 183.

Section 175 of said charter, relating to the replenishment of funds for street and park openings, does not authorize the sale of corporate stock for that purpose, but provides for the replenishment of said fund by taxation.

However, a taxpayer is not entitled to maintain a suit to restrain the collection of moneys for the city's share of the cost of opening and extending the Queens boulevard by taxation and to compel the moneys to be raised by the issue of corporate stock, for the Legislature by the amendment to section 247 of the charter required the funds to be raised by taxation to be levied and collected with the taxes upon the real property in said city and the only discretion left with the board of estimate and apportionment was whether the tax should be imposed as due and payable in the year in which the cost and expenses shall be fixed, or in the next succeeding year. The manner of the payment itself has been determined by the Legislature, the time thereof was only left open and this is a subject upon which the taxpayer is not entitled to be heard.

Furthermore, a taxpayer has no right to demand either at law or in equity the vindication of a public right unless the violation of that right affects him injuriously in some peculiar manner in which other members of the community are not equally affected.

The present taxpayer's action is not authorized by section 1925 of the Code of Civil Procedure, for it does not seek to obtain a judgment preventing waste or injury to the property of the city, but relates only to the manner of raising funds to pay an obligation that the city is lawfully required to pay.

MOTION to dismiss an appeal by the plaintiff, William Jay Schieffelin, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 1st day of March, 1918, denying his motion for an injunction *pendente lite*.

*Leonard M. Wallstein*, for the appellant.

*John F. O'Brien* of counsel [*Terence Farley* and *Edward S. Malone* with him on the brief; *William P. Burr, Corporation Counsel*], for the respondents.

PAGE, J.:

The action is brought by a taxpayer to restrain the defendants from including in the sum to be raised by taxation for the year 1918, $2,061,364.06, or any other amount as the city's share in the cost of the opening and extending of the Queens boulevard in the borough of Queens.

Briefly stated, plaintiff charges that it would be an illegal official act for the city to pay its portion of the expenses for the acquisition of lands for Queens boulevard out of

money to be raised by taxation for the year 1918, and that the proper method is to discharge that indebtedness out of money to be raised by the issue of corporate stock or serial bonds.

Upon the bringing of the action the plaintiff obtained on February 25, 1918, an order to show cause why the relief demanded in the complaint should not be granted *pendente lite.* Such motion was heard at Special Term February 27, 1918, and denied March 1, 1918. After the denial of the temporary injunction the acts which the court at Special Term refused to restrain during the pendency of the suit were performed by the defendants, and it is claimed that the appeal herein for that reason is academic and a motion has been made to dismiss the appeal on that ground; but, inasmuch as all of the things necessary to be done to perfect the tax levy have not been done, and this provision is carried as a separate item, and, therefore, are severable from the other provisions of the annual tax levy ordinance, in my opinion it would be better to consider the appeal upon the merits. The successive steps in the Queens boulevard proceedings are, briefly stated, as follows:

On May 25, 1910, the chief engineer recommended that proceedings be instituted to acquire title to the boulevard. On June third the board adopted a resolution directing the secretary to publish notice of the proposed area of assessment and fixing July tenth for a public hearing. Only the local area of assessment was described and no reference made to the city or borough bearing part of the expenses. On July tenth a public hearing was held and the matter was referred to the president of the borough of Queens and the chief engineer. On November fourth these two officials recommended that the expenses be borne in the following proportions: Fifty per cent by the city, thirty per cent by the borough and twenty per cent by local assessment, and called attention to the fact that there was no provision for raising the borough's share except by making an assessment map of the entire borough. On November twenty-third a resolution was adopted directing the secretary to publish notice of a public hearing because it was intended to acquire title as far as Hillside avenue. Again only the local area was described and no reference

was made either to the city or to the borough. Notice was published and a public hearing was held. No action was taken thereon, however, as the president of the borough of Queens and the chief engineer recommended that action be postponed until the necessary legislation had been secured permitting the collection of the borough's share by tax levy. Thereafter section 247 of the Greater New York charter was enacted. (Laws of 1901, chap. 466, § 247, as added by Laws of 1911, chap. 679.)* On October 19, 1911, the board of estimate and apportionment adopted resolutions in respect to acquiring the land for the opening and extending of the Queens boulevard. The board at that time by resolution determined that fifty per cent of the cost should be borne and paid by the city of New York, thirty per cent by the borough of Queens and twenty per cent assessed against the property benefited. This resolution fixed the manner for raising the money to pay and the share of the borough and the benefited property. The appellant calls attention to the fact that nothing was done at this time determining the manner in which the city's share was to be paid. The explanation of this omission is found in the fact that as section 247 of the charter then existed, there was no requirement that the city's portion should be raised by taxation, but the matter was left open for appropriate action under charter provisions which would have enabled the board of estimate and apportionment to have issued corporate stock or serial bonds for the same. Due notice of the public hearing advertised by the board of the meeting when this resolution was adopted was given.

Again, on June 26, 1914, the board of estimate and apportionment adopted resolutions in respect to acquiring title for the opening and extension of Queens boulevard and again determined that the same proportion of the expense was to be borne by the city, the borough of Queens and the property benefited. This second resolution was rendered necessary by reason of some changes made in the map. Notice of a public hearing was duly advertised before such action was taken.

---

* Since amd. by Laws of 1916, chap. 512, and Laws of 1917, chap. 396.—

The resolution at this meeting provided the same method for raising money to pay the borough's share and the property owner's share of the cost of this improvement as was provided in the resolution of October, 1911, and it was not until a resolution adopted by the board of estimate and apportionment on February 21, 1918, that the manner of paying the city's share was determined.

On this appeal both parties have cited, as controlling, the so-called "Pay as You Go Act" (Laws of 1916, chap. 615). This act amended section 169 of the Greater New York charter. Instead of amending or repealing specific sections of the charter, which provided for the issuance of corporate stock or bonds, or clearly expressing the limitation on the power of the city to issue such stock and bonds, this act left the power to issue them, in many instances, as it was in the original section, and placed the limitation on the right to expend the proceeds realized from their sale for other than revenue producing improvements, and then made exceptions to the exception. Therefore, instead of being able to determine from the act itself we are compelled to grope through the various sections of the charter to discover what was the scope, effect and intention of the act. Among the powers to issue corporate stock and bonds that apparently were preserved by that act, which are material to this appeal, are the following: "2. For the purposes specified in section one hundred and seventy-four of this act; 3. For the purposes specified in section one hundred and seventy-six of this act; 4. For the purposes specified in section one hundred and eighty-four of this act."

For a proper understanding of section 174, it is necessary to consider section 173 (as amd. by Laws of 1910, chap. 683), which provides for the establishment of the fund for street and park openings which was to be made up as follows: 1. Cash balance in the treasury of corporation known as the Mayor, Aldermen and Commonalty of the City of New York. 2. Cash balances in the treasuries of the various municipalities consolidated into the city of New York applicable to the payment of damages awarded by commissioners of estimate and assessment "in proceedings taken to open any street, road, avenue, boulevard, public square or place, park

or parkway, * * * and all the costs and expenses of such proceedings heretofore or hereafter taxed." 3. Such sums as may be raised by taxation in the city of New York, and the proceeds of such bonds as may be issued as by this act provided to meet the expense, in whole or in part, of any of the objects and purposes in the preceding subdivision specified. 4. All moneys thereafter collected by the city of New York for or on account of assessments made and confirmed and thereafter to be made and confirmed for any of the objects specified in the 2d subdivision. 5. All moneys received from the sale of street and park opening assessment bonds or certificates of indebtedness and other evidences of indebtedness issued pursuant to section 187 of this act issued and sold pursuant to the authority of section 174 of this act, all of such street and park opening assessment bonds to be paid when due from this fund, and in case the fund shall be insufficient for that purpose, " it shall be lawful for the comptroller when thereto authorized by the board of estimate and apportionment, without the concurrence or approval of any other board or public body to issue corporate stock of The City of New York for an amount sufficient to pay the street and park opening assessment bonds so falling due, as aforesaid; or the comptroller may, in his discretion, for such purpose, issue street and park opening assessment bonds in the manner provided in section one hundred and seventy-four of this act."

Section 174 (as amd. by Laws of 1910, chap. 683) provided for the payment, from this fund, of all damages awarded by commissioners of estimate and assessment in reports thereafter or theretofore confirmed in proceedings taken to open any street, and other proceedings above enumerated. Provision is then made for the manner of payment to the persons in whose favor the awards have been made, and in case such awards, costs and expenses shall exceed the balance in said fund, provision is made for the issuance and sale of certificates and other evidences of indebtedness to be redeemed out of the tax levy of the next succeeding year or by the issue and sale of street and park opening assessment bonds. " Provided, however, that in each and every case in which by virtue of any existing statute or any statute hereafter

enacted, or by virtue of any act or resolution heretofore or hereafter adopted by any board or body pursuant to any statute, the whole or any portion of the awards made in any proceeding, and of the costs and expenses thereof, are payable out of the fund for street and park openings and are not to be assessed upon the property benefited, but are to be borne and paid by The City of New York, the board of estimate and apportionment may, in its discretion, direct that the amount so to be borne and paid by said City of New York shall be raised by the issue and sale of corporate stock of The City of New York, and the comptroller shall thereupon issue and sell said stock at such times and in such amounts as may be necessary, and shall pay the proceeds thereof into said fund for street and park openings."

Section 176 of the charter (as amd. by Laws of 1914, chap. 446) provides for the payment of assessments in street opening proceedings imposed upon the city from any surplus existing or which may thereafter arise in the funds known as the " fund for street and park openings " and the " street improvement fund," and if there shall be no such surplus for the issuance and sale of corporate stock and the payment of any and all such assessments and expenses from the proceeds of the sale thereof. Section 184 merely provides for the sale of corporate stock to pay bonds payable from assessments.

It would appear, therefore, that the discretion of the board of estimate and apportionment to direct the issuance of corporate stock, for the purpose of paying that part of the awards made by the commissioners in the Queens boulevard proceedings and the costs and expenses thereof which were to be borne by the city of New York, was expressly preserved by the " Pay as You Go Act," unless it is qualified by subsequent portions of the act. The corporation counsel contends that such a qualification is to be found in paragraph 8 which authorizes the issuance of such corporate stock and bonds " to pay the awards, costs, charges and expenses of acquiring title to lands required for public purposes and which have been or may hereafter be authorized by or pursuant to law, and subject to the limitations hereinafter contained." Inasmuch as this paragraph was contained in the section before amendment (Laws of 1915, chap. 309), as were those provisions herein -

before considered, except the last phrase " and subject to the limitations hereinafter contained " was added by amendment by the " Pay as You Go Act," it would seem clear that this paragraph referred to the acquisition of lands for public purposes, other than for streets, avenues, parks and .other uses which had been provided by the preceding paragraphs of the act. Where special provision is made for one class, a general provision that might be applicable to that class will not be deemed to include that class, but it will be assumed to be the legislative intent that the specific provision shall be applied to the class to which it refers and the general provision to all other classes, for which specific provision has not been made.

The corporation counsel further contends that the following provision of the " Pay as You Go Act " (which is that to which reference is made in paragraph 8) prohibits the use of the proceeds of the sale of corporate stock for the purpose of paying this assessment: " The city of New York shall not, except as hereinafter provided, expend any part of the proceeds of sales of corporate stock or serial bonds for other than revenue-producing improvements."

The term " revenue-producing " improvements is defined in the act, and the opening and widening of streets clearly do not come within that definition. Then follows an exception, as follows: " Nothing herein contained, however, shall limit the power of the board of estimate and apportionment to authorize the use of the proceeds of the sale of corporate stock * * * to replenish the street improvement fund or the fund for street and park openings. * * *." If we read section 175 of the charter (as amd. by Laws of 1910, chap. 683) which is entitled " Replenishment of said fund," i. e., the fund for street and park openings, we do not find any provision therein contained that authorizes the sale of corporate stock for that purpose, but instead a provision for the replenishment of the fund by taxation. Hence this provision would be meaningless unless it has reference to section 176, which we have already considered. It is my opinion the limitation contained in this provision of the " Pay as You Go Act " does not apply to the payment of assessments against the city payable out of the street and park opening fund but to the acquisi-

tion of lands required for other public purposes, provided for in paragraph 8.

I have thus somewhat elaborately considered the " Pay as You Go Act " and the various sections of the charter because the counsel for both parties to this appeal have based their contentions upon the language of this act. In my opinion, however, they have overlooked the determinative factor in this case. In 1917 the Legislature amended section 247 of the charter (Laws of 1917, chap. 396) by inserting the words " by the city of New York " and " in said city " therein so that at the time the board of estimate and apportionment met to consider the manner of paying that portion of the cost and expense of the Queens boulevard to be borne by the city of New York, the law required that portion to be raised by taxation to be levied and collected with the taxes upon the real property in said city, and the only discretion that remained in the board of estimate and apportionment was whether the tax should be imposed becoming due and payable in the year in which the cost and expense shall be fixed or in the next succeeding year. The manner of its payment had been determined by the Legislature; only the time of payment was left open, and that clearly was not a subject on which the plaintiff was entitled to be heard.

Furthermore, in my opinion, this action cannot be maintained. As has been repeatedly decided, at common law a taxpayer, as such, has no right of action against a public official to restrain or prevent the waste of public funds or injury to public property or to restrain a threatened illegal official act. The taxpayer has no right to demand either at law or in equity the vindication of the public right unless the violation of that right affected him injuriously in some peculiar manner in which other members of the community were not equally affected. As a result of the many illegal and wasteful acts committed by Tweed and his associates, the Legislature enacted chapter 161 of the Laws of 1872, which was the foundation for various acts of the Legislature which have since been passed and have been embodied in section 1925 of the Code of Civil Procedure and section 51 of the General Municipal Law (Consol. Laws, chap. 24; Laws of 1909, chap. 29), and the right of a taxpayer to bring such an action must

be found in one of said sections. This action is not authorized by section 1925 of the Code, for it is not an action to obtain a judgment preventing the waste of or injury to the estate, funds or other property of the county, town or city. This action relates to the manner of raising the funds to pay an obligation that the city is lawfully required to pay.

The propriety of the opening and extending of Queens boulevard is not before us, nor are any of the steps taken to ascertain the amount that is to be raised, nor the proportion that is to be borne respectively by the property benefited, the borough of Queens and the city of New York.

All of these matters were long since disposed of and settled, and it is not claimed in this action that any of those determinations were either irregular or void. The provisions of section 51 of the General Municipal Law are broader than those of section 1925 of the Code, for not alone is the right given to a taxpayer to maintain an action to prevent waste or injury to the property, funds or estate of the town, county or city, but also to prevent any illegal official act on the part of any officers, agents, commissioners or other persons. The broad language of that section, however, has been thus interpreted by the Court of Appeals:

" The words ' to prevent any illegal official act,' interpreted by the history of the new legislation commencing in 1872, in connection with the clauses with which these words are associated, plainly relate to acts germane to the purpose of the new legislation, which was to extend the remedy for the protection of taxpayers against frauds and peculations of public officials and to prevent usurpation by public bodies or agents, of powers not granted, the exercise of which may imperil the public interests." (*Rogers* v. *O'Brien*, 153 N. Y. 357, 361.) And again:

" The mere illegality of the official act in and of itself does not justify injunctive relief at the request of the taxpayer. To be entitled to this relief, when waste or injury is not involved, it must appear that in addition to being an illegal official act the threatened act is such as to imperil the public interests or calculated to work public injury or produce some public mischief." (*Altschul* v. *Ludwig*, 216 N. Y. 459, 467.)

Viewed in the light of this interpretation of the statute it

is very clear that even if the act of the board of estimate were technically illegal, it is not such an illegality as permits the bringing of an action under either of these sections.

The order should be affirmed, with ten dollars costs and disbursements, and the motion to dismiss the appeal denied.

CLARKE, P. J., SMITH, DAVIS and SHEARN, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements, and motion to dismiss appeal denied.