2003 OK 18

**INDEPENDENT SCHOOL DISTRICT NO. I-20 OF MUSKOGEE COUNTY, Plaintiff/Appellee,**

v.

**OKLAHOMA STATE DEPARTMENT OF EDUCATION, Defendant/Appellant.**

No. 95,684.

Supreme Court of Oklahoma.

March 4, 2003.

D.D. Hayes, Muskogee, OK, for Plaintiff/Appellee.

Kay Harley, General Counsel, Department of Education, Oklahoma City, OK, Scott D. Broughton, Assistant Attorney General, Oklahoma City, OK, for Defendant/Appellant.

KAUGER, J.

¶ 1 We granted certiorari to address three issues: 1 whether the State Department of Education may withhold future payments to a school district pursuant to 70 O.S.2001 § 18–118[1] to recoup funds which it overpaid because of a computer error; 2) whether recovery of the overpayment would violate the constitutional debt limitations of the Okla. Const. art. 10, § 26[2]; and 3) whether venue is proper in the county where the school district is located. We hold that: 1) pursuant to 70 O.S.2001 § 18–118,[3] the State Department of Education may withhold future payments to a school district to recoup funds which it overpaid because of a computer error; 2) the constitutional debt limitations of the Okla. Const. art. 10, § 26 do not preclude the Department's recovery of the overpayment; and 3) venue is proper in the county where the school district is located.

---

**1.** Title 70 O.S.2001 § 18–118 provides:

"A. The State Board of Education shall appoint auditors who shall audit the funds of the public school districts and the use made of the monies thereof, and shall make such other audits as may be required by the State Board of Education.
B. School districts and officers and employees thereof who divert any monies received by a district from the purpose for which the monies were apportioned to the district shall be jointly and severally liable for any such diversion.
C. If audits disclose that state monies have been illegally apportioned to, or illegally disbursed or expended by, a school district or any of its officers or employees, the State Board of Education shall make demand that said monies be returned to the State Treasurer by such school district. If said monies are not returned, the State Board shall withhold the unreturned amount from subsequent allocations of state funds otherwise due the district. The State Board of Education shall cause suit to be instituted to recover for the state any

monies illegally disbursed or expended, if not otherwise recovered as provided herein."
Because this statute has not been amended since 1990, references are to the current version.

**2.** The Okla. Const. art. 10, § 26 provides in pertinent part:

"(a) Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness. . . ."

**3.** *Id.*

## FACTS [4]

¶ 2 Title 70 O.S.2001 § 18–118 provides for the recoupment of state monies which have been "illegally apportioned to, or illegally disbursed or expended by," a school district.[5] School districts receive state aid from money appropriated by the Legislature and allocated by the appellant, the State Department of Education (Department).[6] A large factor in determining the amount of state aid a school district receives is the average daily membership of the school district.[7] This cause concerns a dispute over the application of § 18–118 to school districts which mistakenly report inflated attendance figures as a result of computer errors.

¶ 3 Since 1988, the appellee, the Independent School District No. I–20 of Muskogee County (school district/district) has used computer software provided by National

---

4. We note that the appellant designated for inclusion in the record the defendant's motion for summary judgment and brief in support which was filed in the trial court on October 25, 2000. The document was included in the record on appeal; however, statements in the document refer to attached exhibits. Similar references are made in the appellant's brief in chief. Apparently, the exhibits were not attached to the document because they were not included in the record on appeal. Rule 1.34, 12 O.S.2001, Ch. 15, App. 1, Oklahoma Supreme Court Rules provides in pertinent part:

"... (g) **Extension of Date for Completion of Record.** The appealing party, whether an appellant, counter or cross-appellant, bears responsibility to ensure timely preparation of an adequate record to review the issues urged by that party. The appealing party must timely order and pay for transcripts, designate record, monitor proper completion in the trial court ..."

Although we were able to glean the relevant facts from other parts of the record and the appellant's stated facts which would have been supported by the exhibits were not facts which were dispositive of the issues presented, it is the appealing party's responsibility to ensure that the record contains the proper documentation that they intended to be included in the record.

5. Title 70 O.S.2001 § 18–118, see note 1, supra.

6. The Okla. Const. art 13, § 1a provides in pertinent part:

"The Legislature shall, by appropriate legislation raise and appropriate funds for the annual support of the common schools of the State to the extent of forty-two ($42.00) dollars per capita based on total state-wide enrollment for the preceding school year. Such moneys shall be allocated to the various school districts in the manner and by a distributing agency to be designated by the Legislature ..."

Title 70 O.S.2001 § 18–103 provides in pertinent part:

"There shall be apportioned and disbursed annually by the State Board of Education, from appropriations made by the Legislature for this purpose and from funds derived from other sources provided by law for this purpose, to the several school districts of the state, such sums of money as each school district may be qualified to receive under the provisions of this article...."

Because the statute has remained unaltered since its enactment, references are to the current version. See also, 70 O.S.2001 § 18–101 et seq.

7. Title 70 O.S. Supp.1996 § 18–201 provides in pertinent part:

"... B. The weighted calculations provided for in subsection A of this section shall be determined as follows:
1. The weighted pupil grade level calculation shall be determined by taking the highest average daily membership of the preceding two (2) years of a school district and assigning weights to the pupils according to grate attended ..."

This statute was repealed in 1998. See also, 70 O.S. Supp.1996 §§ 18–200–200.1. Title 70 O.S. Supp.2002 § 18–200.1 provides in pertinent part:

"A. Beginning with the 1997–98 school year, and each school year thereafter, each school district shall have its initial allocation of State Aid calculated based on the state dedicated revenues actually collected during the preceding fiscal year, the adjusted assessed valuation of the preceding year and the highest weighted average daily membership for the school district of the two (2) preceding years. The State Department of Education shall notify each school district by July 15 of the districts initial allocation level. Each school district shall submit the following data based on the first nine (9) weeks, to be used in the calculation of the average daily membership of the school district:
1. Student enrollment by grade level;
2. Pupil category counts; and
3. Transportation supplement data...."

See also, 70 O.S.2001 § 18–201.1.
Title 70 O.S.2001 § 18–107 provides in pertinent part:

"... 2. 'Average Daily Membership' (ADM) means the average number of pupils present in a school district during a school year. Average Daily Membership shall be calculated by dividing the sum of the pupil's total days present and total days absent by the number of days taught...."

This statute was amended in 1998, however references are to the current version because the

Computer Systems (NCS) to compute student statistical attendance reports which are used to determine the district's average daily membership.[8] The software is approved for use by the Department. In February of 1996, NCS sent the school district an upgrade for the computer software which was intended to improve reported errors in the student attendance software program. The district installed the upgrade on April 10, 1996.

¶ 4 Apparently unbeknownst to the district, the upgrade created a glitch which erroneously changed how the software calculated the district's annual statistical reports. On May 24, 1996, NCS sent the district another upgrade which could have corrected problems caused by the first upgrade. However, this upgrade was not installed on the system until after the district ran the annual statistical reports which were used by the Department to calculate the district's average membership. Consequently, the district's annual statistical report, which was produced for filing at the end of May in 1996, showed inflated student attendance numbers.

¶ 5 Because state aid is calculated, in part, by using the higher of the past two years' average daily membership figures of a school district,[9] the district received additional state aid in both the 1996–97 and the 1997–98 school years based on the erroneously inflated attendance figures. According to the Department, the overpayment totaled $3,551,356.00.

¶ 6 Sometime in early 1998, the Department became aware that the school district had received a large increase in state aid.

The Department asked the State Auditor and Inspector to audit the school district's attendance figures for the years involved. On August 11, 1998, the State Auditor released the audit which confirmed inflated attendance figures. The Department verified the State Auditor's figures and requested a formal opinion from the Attorney General asking for a determination of: 1) whether the Department was obligated to recover the excess money paid to the school district; and 2) whether the Okla. Const. art. 10, § 26[10] prohibited recovery of a previous year's overpayment.

¶ 7 On July 20, 1999, in response to the inquiry,[11] the Attorney General issued Opinion No. 99-36, holding that: 1) the Department has an affirmative obligation to recover a prior year overpayment of state aid once it is verifies that an overpayment has occurred; and 2) because the recoupment statute, 70 O.S.2001 § 18–118,[12] does not require any tax levy to satisfy a prior year's obligation, it is not the type of debt precluded by the Okla. Const. art. 10, § 26.[13] On January 20, 2000, the State Board of Education (Board) met to discuss the Attorney General's opinion, the audit, and overpayment. The school district attended the meeting and read a statement from their legal counsel which expressed opposition to the Attorney General's opinion. The Board voted to follow the Attorney General's opinion and it adopted a ten-year recoupment plan for withholding future state aid to recover the overpayment that was made to the school district.

¶ 8 Subsequently, the school district requested a hearing pursuant to the Adminis-

pertinent portions of the statute remain unchanged.

**8.** Title 70 O.S.2001 § 5–128 provides:

"Boards of education of all school districts are hereby required to make annual statistical and financial reports to the State Board of Education. The statistical report shall be made as of June 30. Each of such reports shall be filed with the State Board of Education as soon as information is available following the effective date of such reports."

Because the statute has remained unaltered since 1993, references are to the current version.

**9.** 70 O.S. Supp.2002 § 18–200.1 see note 7, supra.

**10.** The Okla. Const. art. 10, § 26, see note 2, supra.

**11.** The Department's inquiry provided:

"1. Does the State Department of Education have an obligation to recover a prior year overpayment of state aid from a school district, once it is verified that an overpayment occurred?

2. Do the limits in Article X, § 26 of the Oklahoma Constitution prevent the recovery of a previous overpayment by the State to a school district?"

**12.** Title 70 O.S.2001 § 18–118, see note 1, supra.

**13.** The Okla. Const. art. 10, § 26, see note 2, supra.

trative Procedures Act.[14] On March 1, 2000, the Department denied the request for a hearing, arguing that: 1) no rule was promulgated; 2) the only action that was taken was to approve a ten-year repayment plan; and 3) it was bound to follow the Attorney General's opinion.[15] The school district filed an action in the district court of Muskogee County on March 8, 2000. It alleged that it was entitled to a declaratory judgment pursuant to 75 O.S.2001 § 306[16] of the Oklahoma Administrative Procedures Act (the Act) and judicial review of the order, decision, rule or policy of the Department pursuant to §§ 307[17] and 318[18] of the Act. The school district argued that 70 O.S.2001 § 18–118[19] is inapplicable when overpayments to a school district are caused by a computer error, and alternatively, if § 18–118 were applicable, recouping the money is a violation of art. 10, § 26 of the Oklahoma Constitution.[20]

¶ 9 The Department sought to dismiss the action, arguing that venue was not proper in Muskogee County. On June 12, 2000, the trial court entered an order establishing venue in Muskogee County. A non-jury trial was held on November 17, 2000; and on December 1, 2000, the trial court entered judgment for the school district. The Department appealed, and on September 10, 2002, the Court of Civil Appeals affirmed in part and vacated in part. We granted certiorari on November 18, 2002.

### I.

¶ 10 **PURSUANT TO 70 O.S.2001 § 18– 118, THE STATE DEPARTMENT OF EDUCATION MAY WITHHOLD FUTURE PAYMENTS TO A SCHOOL DISTRICT TO RECOUP FUNDS WHICH IT OVERPAID BECAUSE OF A COMPUTER ERROR.**

¶ 11 Title 70 O.S.2001 § 18–118[21] requires the Board to audit the funds of public school

---

14. The Oklahoma Administrative Procedures Act, 75 O.S.2001 §§ 250 et seq.

15. Title 74 O.S.2001 § 18b provides in pertinent part:

"A. The duties of the Attorney General as the chief law officer of the state shall be:

. . .

5. To give an opinion in writing upon all questions of law submitted to the Attorney General by the Legislature or either branch thereof, or by any state officer, board, commission or department . . ."

16. Title 75 O.S.2001 § 306 provides in pertinent part:

"A. The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the county of the residence of the person seeking relief or, at the option of such person, in the county wherein the rule is sought to be applied, if it is alleged the rule, or its threatened application, interferes with or impairs or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. . . ."

Because the statute has remained unaltered since 1987, references are to the current version.

17. Title 75 O.S.2001 § 307 provides:

"Each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory rulings as to the applicability of any rule or order of the agency. A declaratory ruling, or refusal to issue such ruling, shall be subject to a judicial review in the manner provided for review of decisions in individual proceedings as provided in Sections 317 through 323 of this title."

Because the statute remains unaltered since 1987, references are to its current version.

18. Title 75 O.S.2001 § 318 provides in pertinent part:

"A.1. Any party aggrieved by a final agency order in an individual proceeding is entitled to certain, speedy, adequate and complete judicial review thereof pursuant to the provisions of this section and Sections 319, 320, 321, 322 and 323 of this title.

. . .

B. 1. The judicial review prescribed by this section for final agency orders, as to agencies whose final agency orders are made subject to review, under constitutional or statutory provisions, by appellate proceedings in the Supreme Court of Oklahoma . . .

2. In all other instances, proceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated, within thirty (30) days after the appellant is notified of the final agency order as provided in Section 312 of this title. . . ."

Because the statute has remained unaltered since 1992, references are to its current version.

19. Title 70 O.S.2001 § 18–118, see note 1, supra.

20. The Okla. Const. art. 10, § 26, see note 2, supra.

21. Title 70 O.S.2001 § 18–118, see note 1, supra.

districts, and it provides for joint and several liability of school district officers and employees who divert state money from the purpose for which it was apportioned. The statute also provides that if an audit discloses that state monies have been "illegally apportioned to, or illegally disbursed or expended by, a school district or any of its officers or employees," the Board must either demand that the money be returned or it must withhold the unreturned amount from subsequent allocations of state funds.

¶ 12 The school district argues that there is no evidence of any bad faith, dishonesty, wrongdoing, fraud or malice on the part of the school district's officers or employees, thus the Board has no authority under § 18–118 to recoup state money which was disbursed as a result of a computer error. The Department asserts that: 1) the overpayment was illegally apportioned because the district received funding for which it did not qualify under the law; and 2) it is under an affirmative duty to recover state monies which have been illegally apportioned regardless of how the overpayment occurred. It also insists that allowing the district to keep the erroneous apportionment would be tantamount to the state making a gift to the school district in violation of art. 10, § 15 of the Okla. Const.[22]

¶ 13 In determining whether a statute applies to a given set of facts, we focus on legislative intent [23] which controls statutory interpretation.[24] Intent is generally ascertained from the whole act, considering its general purpose and objective.[25] Relevant portions of an act are considered together, wherever possible, to give full force and effect to each other.[26] When statutory intent cannot be ascertained from the statutory language, ie., in cases of ambiguity or conflict, rules of statutory construction are employed.[27]

¶ 14 The purposes of the state aid program include providing the best possible educational opportunities to every child in Oklahoma and creating a beneficial use of public funds expended for education.[28] Funds are to be apportioned objectively, and state support should work to assure equal educational op-

---

**22.** The Okla. Const. art. 10, § 15 provides:

"The credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State; nor shall the State become an owner or stockholder in, nor make donation by gift, subscription to stock, by tax, or otherwise, to any company, association, or corporation."

**23.** *Keating v. Edmondson,* 2001 OK 110, ¶ 8, 37 P.3d 882; *Nealis v. Baird,* 1999 OK 98, ¶ 55, 996 P.2d 438.

**24.** *World Publishing Co. v. White,* 2001 OK 48, ¶ 10, 32 P.3d 835; *Smicklas v. Spitz,* 1992 OK 145, ¶ 8, 846 P.2d 362; *Clifton v. Clifton,* 1990 OK 88, ¶ 7, 801 P.2d 693.

**25.** *McSorley v. Hertz Corp.,* 1994 OK 120, ¶ 6, 885 P.2d 1343; *Oglesby v. Liberty Mut. Ins. Co.,* 1992 OK 61, ¶ 8, 832 P.2d 834; *Smicklas v. Spitz,* see note 24, supra.

**26.** *Walker v. Group Health Services,* 2001 OK 2, ¶ 24, 37 P.3d 749; *Davis v. GHS Health Maintenance Organization, Inc.,* 2001 OK 3, ¶ 10, 22 P.3d 1204.

**27.** *Keating v. Edmondson,* see note 23, supra; State ex. rel. *Dept. of Human Serv. v. Colclazier,* 1997 OK 134, ¶ 9, 950 P.2d 824; *Matter of Estate of Flowers,* 1993 OK 19, ¶ 11, 848 P.2d 1146.

**28.** Title 70 O.S.2001 § 18–101 provides in pertinent part:

"The Legislature hereby declares that this act is passed for the general improvement of the public schools in the State of Oklahoma; to provide the best possible education opportunities for every child in Oklahoma; and to have a more beneficial use of public funds expended for education; and this act shall be liberally construed to attain these goals within the purview of the following principles and policies

. . .

7. The system of public school support should make provisions for the apportionment of state funds to local school districts on a strictly objective basis that can be computed as well by the local district as by the state.

. . .

9. . . . State support should, to assure equal educational opportunity provide for as large a measure of equalization as possible among districts. . . ."

Because § 18–101 has remained unaltered since its enactment, references are to the current version.

Title 70 O.S.2001 § 1–102 provides:

"The purpose of the Oklahoma School Code is to provide for a state system of public school education and for the establishment, organization, operation and support of such state system."

portunities among the school districts.[29] Article 18 of the Oklahoma School Code (the Code) is to be liberally construed to attain these goals.[30]

¶ 15 The State Department of Education, through the State Board of Education, is responsible for administration of the public school system in the state.[31] The Board is responsible for apportioning and disbursing annual appropriations to school districts which meet qualifications to receive state aid.[32] If the Board ascertains that any of the factors on which apportionment or allocations are based have changed so as to disqualify the district or reduce its aid, the Board has an affirmative duty to adjust the apportionment or collect an overpayment.[33] Forfeiture of state aid and recovery of overpayments are governed by 70 O.S.2001 §§ 18–116-118.[34]

¶ 16 Section 18–116 provides penalties for knowing and wilful violations of the state aid program of the Code.[35] Section 18–117 pro-

**29.** Title 70 O.S.2001 § 18–101 see note 28, supra.

**30.** Title 70 O.S.2001 § 18–101, see note 28, supra. See also, 70 O.S.2001 § 1–103 which provides:

"If any section or part of the Oklahoma School Code is found to be ambiguous or otherwise subject to more than one interpretation, such section shall be liberally construed to the extent that the general purpose of the entire Code and of public education may be advanced."

**31.** Title 70 O.S.2001 § 1–105 provides in pertinent part:

"A. The State Department of Education is that department of the state government in which the agencies created or authorized by the Constitution and Legislature are placed and charged with the responsibility of determining the policies and directing the administration and supervision of the public school system of the state. These agencies are the State Board of Education ...
B. The State Board of Education is that agency in the State Department of Education which shall be the governing board of said Department and the public school system of the state...."

**32.** 70 O.S.2001 § 18–103 see note 6, supra.

**33.** Title 70 O.S.2001 § 18–104 provides in pertinent part:

"... B. If the State Board of Education should ascertain that any of the factors on which the apportionment or allocation of State Aid to any school district has so changed as to disqualify such district or to reduce its State Aid, then the State Board of Education shall forthwith notify the district ... as to the amount of reduction in the allocation of State Aid, and the board of education shall immediately request the county clerk to adjust the items of appropriation in accordance with such reduction as to effect a total reduction in the appropriation by the amount which the State aid allocation was reduced; and if there has been an overpayment the same shall be returned to the State

Treasurer and credited to a refund account which shall be available for further payment of State Aid. Whenever it becomes necessary for a school district to refund any overpayment of monies previously received, the school district shall issue such warrant against a properly approved encumbrance in the manner provide by law. Such claim or encumbrance shall be coded as a refund of prior revenue and paid from the current expenses appropriation of the general fund or such other fund or account from which such refund may properly be paid by the school district."
Because this statute has remained unaltered since 1993, references are its current version.

**34.** Title 70 O.S.2001 § 18–116, see note 35, infra; Title 70 O.S.2001 § 18–117, see note 36, infra; Title 70 O.S.2001 § 18–118, see note 1, supra.

**35.** Title 70 O.S.2001 § 18–116 provides in pertinent part:

"A. Any school district which willfully operates school buses contrary to the rules and regulation prescribed by the State Board of Education shall forfeit its State Aid for the time of noncompliance. All State Aid funds shall be withheld from any school district that does not comply with the standards of the State Board of Education for accrediting.
. . .
F. The State Board of Education shall revoke the certificate of any teacher, principal, or superintendent who knowingly or willfully violates any of the provisions of this article.
G. Any official involved in the execution of this article who shall fail or refuse to carry out any of the provisions thereof shall be liable on his official bond, if any, for the monetary damages resulting from said failure to act, and in addition thereto shall be subject to removal from office for neglect of duty under the provisions of law relating to the removal of public officials.
H. Any person or firm who shall knowingly or willfully violate any of the provisions of this article shall be guilty of a misdemeanor. Any public official or public employee violating any of the provisions of this article shall be subject to the penalties for a misdemeanor and in

hibits the Board from knowingly making apportionments or disbursements which are not authorized by law.[36] While §§ 18–116 and 18–117 specifically refer to knowing and wilful violations, such language is absent in § 18–118.[37] Rather, the Legislature used the terms "illegally apportioned to, or illegally disbursed or expended."[38] Had the Legislature intended for the Department to only recoup overpayments which were the result of knowing and wilful conduct, it could have used the same language that it used in §§ 18–116–117—the Legislature neglected to do so.

■ ¶17 The Code sets forth calculations for determining eligibility, apportionment and disbursement of state aid which rely on accurate attendance figures.[39] Any funding that a school district receives which was based on erroneous calculations for whatever reason would have been received contrary to the state aid statutes and formulas. In our view, the Legislature intended, by the use of the words, "illegally apportioned or disbursed," to mean contrary to the state aid statutes and formulas.[40] This interpretation

is consistent with the purposes of the Code as a whole, and the function of the Department. Consequently, we hold that § 18–118 applies to overpayments which were made as a result of computer errors.

## II.

¶18 **THE CONSTITUTIONAL DEBT LIMITATIONS OF THE OKLA. CONST. ART 10, § 26 DO NOT PRECLUDE THE DEPARTMENT'S RECOVERY OF THE OVERPAYMENT.**

■ ¶19 The school district argues alternatively that if § 18–118 applies to the facts of this cause,[41] the Department would be recouping money paid in a prior fiscal year. Consequently, recovery of an overpayment would violate the constitutional debt limitations of the Okla. Const. art. 10, § 26.[42] The Department contends that it would not.

■ ¶20 Article 10, § 26 of the Oklahoma Constitution prohibits school districts from becoming indebted, in any manner, or for any purpose, by an amount exceeding the income and revenue provided for a fiscal year

addition thereto shall forfeit his position or office. Any officer or employee of the State Board of Education who knowingly or willfully apportions or disburses any monies appropriated by this article contrary to the provisions of this article shall be subject to the penalties for a misdemeanor and in addition shall forfeit his office or position...."

This statute was amended in 2000; however, the changes renumbered the pertinent portions but the language remains unaltered. Consequently, references are to its current version.

36. Title 70 O.S.2001 § 18–117 provides:

"All apportionments of State Aid to school districts shall be made by the State Board of Education through its Director of Finance, who shall not knowingly make any apportionment or disbursements of State Aid funds which is not authorized by law. Any State Aid funds illegally disbursed by the Director of Finance shall be returned to the State Treasurer by the school district receiving such funds, or legal action shall be instituted in the name of the state against such school district or on the bond of the Director of Finance."

Because the statute has remained unaltered since 1980, references are to its current version.

37. Title 70 O.S.2001 § 18–118, see note 1, supra.

38. *Id.*

39. See, 70 O.S. Supp.2002 § 18–200.1, note 7, supra.

40. The school district relies on several cases in which courts have determined that statutes which refer to "illegal" acts mean only acts without the authority of law, rather than acts which are merely erroneous. However, these cases are distinguishable on their facts. They involve the interpretation of tax statutes and whether the review of tax assessments which were challenged as either erroneous, inequitable or excessive could be brought before the courts in the first instance. *Protest of Downing*, 1933 OK 387, ¶ ——, 23 P.2d 173; *Syracuse Trust Co. v. Board of Sup'rs of Oneida County*, 258 A.D. 17, 15 N.Y.S.2d 920 (1939); *Christofferson v. Chouteau County*, 105 Mont. 577, 74 P.2d 427 (1937); *Jackson County v. Thornton*, 44 Fla. 610, 33 So. 291 (1902); *Schieffelin v. Craig*, 170 N.Y.S. 603, 183 A.D. 515 (1918); *Ford v. McGregor*, 20 Nev. 446, 23 P. 508 (1890).

41. Because we have determined that 70 O.S. 2001 § 18–118, see note 1, supra, applies to the present cause, we need not address the school district's argument regarding recovery of an overpayment in the absence of an applicable statute.

42. The Okla. Const. art. 10, § 26, see note 2, supra.

without the assent of three fifths of the voters.[43] This constitutional provision forces school districts to operate on a cash basis, and it prevents indebtedness payable out of tax revenues from extending beyond one year.[44] This section serves not only as a restriction on the school district, but also on the Legislature.[45]

¶ 21 Recently, in *Southern Corrections Systems, Inc. v. Union Public Schools*, 2002 OK 93, ¶ 22, 64 P.3d 1083,[46] we recognized that: 1) a debt is a promise to pay a certain amount, with interest, within a fixed time, out of taxes taken from all of the people, including those not benefitted; and 2) indebtedness occurs when borrowed money is to be paid, with interest, from taxes in the future, whether such taxes are formally levied at one time, covering that future, or yearly, to meet the payments when about to mature. We have also recognized that in determining whether a particular obligation is a "debt" within the scope of § 26, we look to the nature of the obligation and the manner of enforcement.[47]

¶ 22 While the school district may be obligated to the Department to repay the funds, the recoupment provisions of § 18 118 do not constitute any kind of deficit financing for the purposes of the constitutional debt limitations. Recouping the money that the Department seeks does not require a tax levy by the district nor does it come from the district's tax collections. Further, recovery of the funds does not in any way amount to the taking away of anything ever legally belonging to the school district—the district was never actually entitled to receive the funds. Accordingly, the constitutional debt limitations of the Okla. Const. art. 10, § 26 are inapplicable to the Department's recovery of the overpayment.

## III.

¶ 23 **VENUE IS PROPER IN THE COUNTY WHERE THE SCHOOL DISTRICT IS LOCATED.**

■ ¶ 24 The Department insists that the provisions of the Administrative Procedures Act[48] are inapplicable because: 1) no rule was promulgated; and 2) no individual proceeding was authorized or conducted from which a final agency order emanated. It argues that pursuant to 12 O.S.2001 § 133[49], venue is only proper in Oklahoma County— where the Department is located. It relies on *Grand River Dam Authority v. State*, 1982 OK 60, 645 P.2d 1011 in support of its argument.

¶ 25 The school district contends that the Act applies because the action of the Department in adopting the Attorney General opinion constitutes an adoption of an administrative rule. Accordingly, it insists that venue is proper in the district court of Muskogee

---

43. The Okla. Const. art. 10, § 26, see note 2, supra. Contracts, executed or executory which seek to bind a school district's revenues of a succeeding fiscal year are void. *Independent School District No. 1 v. Howard*, 1959 OK 17, ¶ 7, 336 P.2d 1097; *Consolidated School Dist. No. 6 v. Panther Oil & Grease Mfg. Co.*, 1946 OK 137, ¶ 4, 168 P.2d 613; *Board of Education of School Dist. No. 47½ v. Jacobs*, 1928 OK 677, ¶ 7, 272 P. 360.

44. *City of Del City v. FOP, Lodge No. 114*, 1993 OK 169, ¶ 5, 869 P.2d 309; *Wyatt–Doyle & Butler Engineers, Inc. v. City of Eufaula*, 2000 OK 74, ¶ 6, 13 P.3d 474; *Independent School District No. 1 v. Howard*, see note 43, supra.

45. *Wyatt–Doyle & Butler Engineers, Inc.* v. *City of Eufaula*, see note 44, supra; *Protest of Carter Oil Co.*, 1931 OK 15, ¶ 16, 296 P. 485; *St. Louis–San Francisco Ry. Co. v. Andrews*, 1928 OK 250, ¶ 0, 278 P. 617.

46. Rehearing time for *Southern Corrections Systems, Inc. v. Union Public Schools*, 2002 OK 93, ¶ 22, 64 P.3d 1083 has expired and an order on appeal related attorney fees has issued. If no rehearing on the attorney fee order is filed, mandate is expected to issue after March 3, 2003.

47. *Clay v. Independent School Dist. No. 1*, 1997 OK 13, ¶ 11, 935 P.2d 294; *City of Del City v. FOP, Lodge No. 114*, see note 44, supra.

48. Title 75 O.S.2001 § 306, see note 16, supra; 75 O.S.2001 § 307, see note 17, supra; 75 O.S. 2001 § 318, see note 18, supra.

49. Title 12 O.S.2001 § 133 provides in pertinent part:
    "Actions for the following causes must be brought in the county where the cause or some part thereof arose:  .
    ... An action against a public officer for an act done by him in virtue, or under color, of his office, or for neglect of his official duties...."

County where the school district is located. It also insists that *Allen v. State* ex rel. *Bd. of Trustees of Oklahoma Uniform Retirement System for Justices and Judges,* 1988 OK 99, 769 P.2d 1302 controls.

¶ 26 Absent a specific statute to the contrary, 12 O.S.2001 § 133 [50] governs actions against state officials [51] and it provides that venue lies in the county in which the cause or some part of it arose. We have recognized that when it is the decisional act of a public officer which emanates from the county of the official's residence that gives rise to the action, venue properly lies in the county of the official's residence. [52] The same result is reached when declaratory relief is sought under the Declaratory Judgment Act. [53]

¶ 27 In *Grand River Dam Authority v. State,* supra, we addressed the Administra- tive Procedures Act's application to Attorney General opinions. [54] *Grand River* concerned a declaratory judgment action brought by the Grand River Dam Authority against the Attorney General in the district court of Craig County. It sought to have an Attorney General opinion which construed its statutory authority and powers overruled. We held that the special venue provisions of the Act did not apply to Attorney General opinions because such an opinion was not a rule under the Act, [55] nor was the Act intended to apply to such opinions. Consequently, we determined that the venue provisions of 12 O.S. 2001 § 133 applied to declaratory suits which directly challenge an Attorney General opinion and that venue was properly in Oklahoma County—the county of the Attorney General's residence.

---

**50.** *Id.*

**51.** *Lowrance v. Patton,* 1985 OK 95, ¶ 23, 710 P.2d 108.

**52.** *State* ex rel. *Dept. of Mental Health and Substance Abuse Services v. Freedom Ranch, Inc.,* 1998 OK 116, ¶ 4, 970 P.2d 181; *Lowrance v. Patton,* see note 51, supra; *Grand River Dam Authority v. State,* 1982 OK 60, ¶¶ 5–6, 645 P.2d 1011; *Oklahoma Ordnance Works Authority v. District Court of Wagoner County,* 1980 OK 100, ¶ 12, 613 P.2d 746; *Hillcrest Medical Center v. Lee,* 1978 OK 23, ¶¶ 15–16, 575 P.2d 971; *Office of Governor–Dept. of Indus. Development v. Dalton,* 1977 OK 34, ¶¶ 10–11, 560 P.2d 971.

**53.** See, *Grand River Dam Authority v. State,* note 52, at ¶ 3, supra; 12 O.S.2001 § 1651 et seq. 12 O.S. Supp.2002 § 1653 provides in pertinent part:
"A. When a declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.
B. The venue of said action shall be established by existing statutes . . ."
Since its enactment in 1961, this statute was amended only twice, both times in 2002. However, references are to the current version because the pertinent portions remain unaltered. See also, *Hillcrest Medical Center v. Lee,* see note 52, supra; *State* ex rel. *State Bd. of Ed. v. District Court of Bryan County,* 1955 OK 346, ¶ 9, 290 P.2d 413.

**54.** Although we have reached numerous other decisions in which 12 O.S.2001 § 133 applied to acts by public officials, none of these involved the application of the Administrative Procedures Act, 75 O.S.2001 §§ 250 et seq. See, e.g., *State* ex rel. *Dept. of Mental Health and Substance Abuse Services v. Freedom Ranch, Inc.,* note 52, supra [Breach of contract action.]; *Young v. Walton,* 1991 OK 20, ¶ 7, 807 P.2d 248 [Breach of contract action]; *Lowrance v. Patton,* see note 51, supra [Action to recover funds improperly paid.]; *Pribram v. Fouts,* 1987 OK 29, ¶ 6, 736 P.2d 513 [Negligence action.]; *Oklahoma Ordnance Works Authority v. District Court of Wagoner County,* see note 52, supra [Negligence action.]; *Hillcrest Medical Center v. Lee,* see note 52, supra [Declaratory judgment action to collect on open account.]; *Office of Governor–Dept. of Indus. Development v. Dalton,* see note 52, supra [Breach of contract action.]; *State* ex. rel. *Director of Oklahoma Alcoholic Beverage Control Bd. v. Smith,* 1974 OK 11, ¶ 5, 519 P.2d 477 [Action to enjoin enforcement of open saloon laws.]; *State* ex rel. *Oklahoma Tax Commission v. District Court of Nowata County,* 1974 OK 17, ¶ 3, 519 P.2d 513 [Recovery of tax money.]; *State* ex rel. *Dept. of Corrections v. Brock,* 1973 OK 95, ¶ 6, 513 P.2d 1293 [Nuisance.]; *Starns v. District Court of Oklahoma County,* 1962 OK 254, ¶ 7, 376 P.2d 592 [Assault.]; *State* ex. rel. *State Dry Cleaners' Bd.* v. *District Court of Nowata County,* 1959 OK 120, ¶ 11, 340 P.2d 939 [Constitutionality of statutes.]; *State* ex rel. *State Bd. of Ed.* v. *District Court of Bryan County,* see note 53, supra [Declaratory judgment action to determine constitutionality of statute.].

**55.** Title 75 O.S.2001 § 250.3 provides in pertinent part:
". . . 15. 'Rule' means any agency statement or group of related statements of general applicability and future effect that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of the agency . . ."

¶ 28 Six years later, we issued *Allen v. State* ex rel. *Bd. of Trustees of Oklahoma Uniform Retirement System for Justices and Judges*, supra, which involved a retired judge's appeal from a decision of the Board of Trustees for the State Public Employees Retirement System that denied his request for credit for active military service. The Court noted that an agency's obedience to the legal advice of the Attorney General—whether considered binding or merely advisory—effected adoption of the Attorney General's opinion as a rule. We recognized that after an agency's adoption of an Attorney General's advice as a basis for its standard of legal conduct, the procedural remedy of a declaratory-relief suit afforded by the Administrative Procedures Act, 75 O.S.2001 § 306 [56] was available to test the validity of the agency's *de facto* rule.[57]

¶ 29 Although *Allen* did not involve a challenge to venue, it's analysis is instructive here. This is not a suit in which the Attorney General's opinion is directly challenged by an agency, like *Grand River*. Rather, the record documents that the Department relied upon the advice of the Attorney General to support its decision to recoup the money it overpaid to the school district. The minutes of the January 20, 2000, meeting of the State Board of Education reflect that the Attorney General's opinion was discussed as a basis for seeking recoupment. Additionally, the letter sent by the Department to the school district which denied the school district a hearing on the matter indicates that the Department reached its decision because it was following the Attorney General's opinion.

¶ 30 Under the rationale of *Allen*, the Department's adoption of the Attorney General's opinion constituted a *de facto* rule which is subject to challenge under the declaratory judgment provision, 75 O.S.2001 § 306 [58] of the Act.[59] Section 306 provides that venue is appropriate in the district court of the county of the residence of the person seeking relief.[60] Accordingly, venue is proper in the county where the school district is located.

## CONCLUSION

¶ 31 The state aid program seeks to assure equal educational opportunities among the school districts by apportioning state monies objectively.[61] The State Department of Education is under a duty to adjust apportionments and collect overpayments in state aid.[62] Consistent with the purposes of the Code, penalties are imposed for knowing and wilful violations and recoupment of overpayments in state monies is required—regardless of whether the overpayment was a result of knowing and wilful conduct.[63] Recovering an overpayment does not impose on a school district the type of obligation prohibited by the constitutional debt limitations of the Oklahoma Constitution.[64] Additionally, when the Department adopts an Attorney General's opinion as its standard of legal conduct, a *de facto* rule is created, implicating the Okla-

**56.** Title 75 O.S.2001 § 306, see note 16, supra.

**57.** See also, *Dewey v. State* ex rel. *Oklahoma Firefighters Pension and Retirement System*, 2001 OK 40, ¶ 15, 28 P.3d 539.

**58.** Title 75 O.S.2001 § 306, see note 16, supra.

**59.** The Act also provides for judicial review of final orders of agencies subject to its provisions. 75 O.S.2001 § 318, see note 18, supra. Even if the Department's decision to recoup the overpayments or the decision to refuse an individual hearing were construed as a final order, judicial review of that decision would be alternatively available under 75 O.S.2001 § 318, see note 18, supra. Section 318 also provides that venue is proper in the county where the party seeking relief resides. For a discussion of the procedures and alternative for judicial review under the act see, *Ricks Exploration Co. v. Oklahoma Water Resources Bd.*, 1984 OK 73, 695 P.2d 498; *Cono-*

*co, Inc. v. State Dept. of Health*, 1982 OK 94, 651 P.2d 125; and *Associated Builders and Contractors of Oklahoma v. State* ex rel. *Oklahoma Dept. of Labor*, 1981 OK 50, 628 P.2d 1156.

**60.** Title 75 O.S.2001 § 306, see note 16, supra

**61.** Title 70 O.S.2001 § 18–101, see note 28, supra.

**62.** Title 70 O.S.2001 § 18–104, see note 33, supra; Title 70 O.S.2001 § 18–116, see note 35, supra; Title 70 O.S.2001 § 18–117, see note 36, supra; Title 70 O.S.2001 § 18–118, see note 1, supra.

**63.** *Id.*

**64.** The Okla. Const. art. 10, § 26, see note 2, supra.

homa Administrative Procedures Act.[65] A school district seeking declaratory relief under the Act is entitled to bring the action in the county where the school district is located.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT REVERSED AND CAUSE REMANDED.**

WATT, C.J., OPALA, V.C.J., HODGES, LAVENDER, HARGRAVE, BOUDREAU, WINCHESTER, JJ., concur.

SUMMERS, J., not participating.

---

**65.** See discussion, pages 615–617, supra.