OSTEOPATHIC HOSPITAL FOUNDERS ASSOCIATION d/b/a Tulsa Regional Medical Center, Appellee and Cross Appellant,

v.

OKLAHOMA DEPARTMENT OF PUBLIC SAFETY, Acting Through the OKLAHOMA HIGHWAY PATROL DEPARTMENT, Appellant,

and

Tulsa County, Acting By and Through the Board of County Commissioners, Cross Appellee.

No. 82190.

Court of Appeals of Oklahoma, Division No. 3.

Feb. 28, 1995.

Susan B. Loving, Atty. Gen., and W. Craig Sutter, Asst. Atty. Gen., Oklahoma City, for appellant.

C. Michael Copeland, Jones, Givens, Gotcher & Bogan, P.C., Tulsa, for appellee and cross appellant.

Fred J. Morgan, Asst. Dist. Atty., Tulsa, for cross appellee.

OPINION

ADAMS, Judge:

Osteopathic Hospital Founders Association, doing business as Tulsa Regional Medical Center (TRMC) sued the Oklahoma Department of Public Safety (DPS) and Tulsa County (County) for the cost of medical services provided to James Whitsell. TRMC claimed those services were provided while Whitsell was in the custody of either DPS or County. Ruling on summary judgment motions filed by TRMC and County, the trial court found DPS was liable for the cost of the services provided to Whitsell and that County was not liable.[1]

In its appeal, DPS argues summary judgment was inappropriate for three reasons: (1) County had a duty to take custody of

---

1. Any jurisdictional questions which this Court raised by prior order have been satisfied by Appellant's response. We note Appellee did not take issue with that response.

Whitsell and is therefore responsible for his medical treatment; (2) Because no statute specifically empowers DPS to contract for medical services for individuals in its custody, it cannot be liable for Whitsell's medical treatment; and (3) Because DPS troopers only stayed at the hospital a maximum of ten hours, DPS is not responsible for the medical treatment rendered after that time. In its Cross Appeal, TRMC argues that County is liable if DPS is not.

## The Underlying Events

The material facts are not in dispute. In the early hours of May 18, 1990, Oklahoma Highway Patrol Trooper Thomas Montgomery observed a Cadillac swerving in and out of its lane and signaled for it to stop. A chase followed, first by car and then on foot. Trooper Montgomery and Whitsell, the driver of the Cadillac, scuffled when Trooper Montgomery tried to take Whitsell into custody. During the struggle Trooper Montgomery's gun fell from its holster. The two men grappled for it. The gun discharged, and Whitsell was shot in the hand. Trooper Montgomery arrested Whitsell for driving under the influence, failing to keep on the right side of the road, attempting to elude, assault and battery, running a roadblock, and failing to carry a security verification form.[2]

Trooper Montgomery gave Whitsell first aid and then took him to TRMC. Trooper Montgomery did not take Whitsell to the Tulsa County Jail because he knew the sheriff would not accept custody of a prisoner who needed medical treatment. Whitsell was admitted on May 18, 1990, and was treated. After Whitsell was admitted to TRMC, Oklahoma Highway Patrol officers kept a watch on him until 12:51 a.m. that day. Whitsell was released from TRMC on June 1, 1990, and he then surrendered to the Tulsa County Sheriff.

## Analysis

■ When a summary judgment is challenged, the appellate court must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and consider all facts and inferences contained therein in the light most favorable to the non-movant. *Redwine v. Baptist Medical Center of Oklahoma, Inc.*, 679 P.2d 1293 (Okla.1983). However, this record does not present a question of disputed fact for our consideration. Instead, the controversy between these parties turns on the question of who, as a matter of law, is responsible for Whitsell's medical treatment.

■ The record is uncontroverted that at least for the first ten hours he was in the hospital, Whitsell was in the actual control and custody of DPS. However, DPS argues that County's statutory duty to receive custody of this prisoner makes County liable for the medical care.

Under 22 O.S.1991 § 1115.2(A)(3), a person who, like Whitsell, is arrested for driving while impaired or under the influence of alcohol, for eluding or attempting to elude a law enforcement officer, or for operating a motor vehicle without a valid driver's license or while the license is under suspension or revocation may not be released upon personal recognizance. Section 1115.2(B) provides that the arresting "officer shall deliver the person ... to an appropriate magistrate" but if no magistrate is available the person "shall be placed in the custody of the appropriate municipal or county jailor or custodian" to be held until the magistrate is available. Because he was not eligible for release on his personal recognizance, County had a duty to accept custody of Whitsell.

However, this conclusion does not end the inquiry. The critical issue is when did that duty arise. Under the DPS theory, that duty arose at the moment Trooper Montgomery arrested Whitsell. This theory ignores the rest of the statute. Trooper Montgomery had a duty to deliver custody to County. Although it appears Whitsell's medical injuries prevented incarceration in the jail facility, Trooper Montgomery made no attempt to surrender his custody, at the hospital or elsewhere, to County. County's duty to accept custody of this prisoner did not arise until that custody was tendered.

2. Later James Whitsell also was charged with driving while his license was revoked.

Next, DPS argues it cannot be liable because there is no specific statutory authorization for it to provide medical care to individuals in its custody. As we understand the decisions of the Oklahoma Supreme Court in this area of law, specific statutory authorization is not necessary. In *State ex rel. Department of Human Services v. Board of County Commissioners of McClain County*, 829 P.2d 961 (Okla.1992), the Oklahoma Supreme Court, applying *City of Tulsa v. Hillcrest Medical Center*, 292 P.2d 430 (Okla. 1956), noted no specific statute was required to impose a duty to provide medical care upon the governmental entity having custody of an injured prisoner.

Finally, DPS argues it cannot be liable for all the medical services provided to Whitsell because it only had Troopers at the hospital for the first ten hours. DPS argues Whitsell was no longer in its custody after that time. However, Whitsell was in actual custody when DPS placed him in the hospital and remained in the hospital during the time these medical services were provided. Further, the hospital staff was advised that Whitsell was under arrest. To conclude that DPS custody ceased when it removed Troopers from the hospital, we would have to presume DPS intended to release Whitsell on his own recognizance in violation of § 1115.2(A)(3). We cannot do so.

The facts shown by the evidentiary material presented to the trial court, when viewed in the light most favorable to DPS, and all reasonable inferences from those facts are consistent only with judgment for TRMC against DPS. Similarly, those same facts and inferences are consistent only with judgment for County on TRMC's claim. The trial court's judgment is affirmed.

AFFIRMED.

GARRETT, C.J., and HUNTER, J., concur.

