Dear Senator Laster:
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 May a public trust lawfully created under 60 O.S. Supp. 2003, § 176, operating a county jail facility, refuse to accept a prisoner when the admitting officer believes the prisoner needs medical treatment, and requires the arresting officers to obtain medical treatment for the prisoner prior to admission?
 Background
¶ 1 Your question references a public trust formed to operate a county jail pursuant to 60 O.S. Supp. 2003, § 176[60-176].[1] A county may form a jail trust authority to operate a county jail under Sections 904.1 through 904.10 of Title 19. A county may also form a public trust to operate a county jail under Section 176 of Title 60. The Oklahoma Supreme Court addressed a number of issues regarding such trusts in two cases involving the Tulsa County Criminal Justice Authority. Tulsa County Deputy Sheriff'sF.O.P., Lodge No. 188 v. Bd. of County Comm'rs, 959 P.2d 979,982 (Okla. 1998) [hereinafter Tulsa I].[2] Such a trust "may exercise rights granted specifically to the county." TulsaCounty Deputy Sheriff's F.O.P., Lodge No. 188 v. Bd. of CountyComm'rs, 995 P.2d 1124, 1131 (Okla. 2000) [hereinafter TulsaII]. Counties may hire private prison contractors to operate their jails as follows:
 Every county, by authority of the board of county commissioners and at the expense of the county, shall have a jail or access to a jail in another county for the safekeeping of prisoners lawfully committed.
 A county may enter into contracts with private prison contractors to provide and operate jail facilities for the county.
57 O.S. 2001, § 41[57-41] (emphasis added). A public trust created to operate a county jail has the same authority. Tulsa II,995 P.2d at 1131. The trust may also employ the personnel necessary to operate the jail. 19 O.S. 2001, § 339[19-339](E).[3]
¶ 2 In Tulsa II, the Oklahoma Supreme Court observed "[t]he Office of Sheriff is constitutionally created `subject to change by the legislature.'" Tulsa II, 995 P.2d at 1130 (quoting Okla. Const. art. XVII, § 2). Tulsa II stated that the duties imposed on the sheriff by the Legislature include "the charge and custody of the jail of his county, and all the prisoners." Id. (quoting 19 O.S. 1991, § 513[19-513]). The court said, "[i]n enacting the privatization statutes, the Legislature has demonstrated its intent to change the duties of sheriff."[4] Id. at 1131.
¶ 3 The court did not consider whether the Legislature intended to alter the duties of the sheriff by allowing Title 60 public trusts to employ personnel to operate county jails. See id.
However, the effects on the duties of a sheriff by the Legislature's action, allowing public trusts to hire their own employees, are the same as the effect of the privatization statutes. Id. As the court observed in the context of the privatization statutes, "the Legislature must have foreseen that such action would alter the duties of sheriff." Id. Therefore, the Legislature intended to alter the duties of the sheriff by permitting public trusts to hire employees to operate jails.
¶ 4 The court also held "the Legislature has provided that all county jails are subject to the same standards whether operated by a county or a private company." Id. at 1129. The trust you describe was created to provide jail functions on behalf of the county. The trust steps into the shoes of the county and the sheriff for the purpose of operating the county jail. Therefore, a county jail operated by a public trust has the same duties as a jail operated by the county itself through the sheriff, or a jail operated by a private prison contractor.
 The Statutory Obligation To Accept Prisoners
¶ 5 You ask whether a county jail facility operated by a public trust may refuse to accept a prisoner based on the prisoner's need for medical treatment. Title 21 O.S. 2003, § 533[21-533] in pertinent part provides:
 A. Any officer or contractor who, in violation of a duty imposed upon the officer or contractor by law as such officer or by contract to receive into the officer's custody any person as a prisoner, willfully neglects or refuses so to receive such person into the officer's custody is guilty of a misdemeanor.
Id.
¶ 6 This statute requires an employee of a public trust operating a jail to accept a prisoner into custody if under a statutory or contractual duty to do so. Neither the statute nor any case law creates an exception to this requirement. See id.
Therefore, a public trust operating a jail may not refuse a prisoner in need of medical attention, if the trust has a duty to accept the prisoner.
¶ 7 This conclusion is supported by the decision of the Oklahoma Court of Civil Appeals in Osteopathic Hospital FoundersAssociation v. Oklahoma Department of Public Safety,892 P.2d 671 (Okla.Ct.App. 1995). In that case, an Oklahoma Highway Patrol trooper made an arrest after a police chase for several offenses, some of which prevented the prisoner from being released on his own recognizance. Id. at 672. During the course of the arrest, the prisoner was shot in the hand after he and the trooper wrestled for the trooper's gun. Id. The trooper applied first aid and transported the prisoner to the hospital. Id. The trooper did not take him to the county jail "because he knew the sheriff would not accept custody of a prisoner who needed medical treatment." Id. at 672. The Highway Patrol watched the prisoner at the hospital for ten hours. Id. After the prisoner was released from the hospital he surrendered to the sheriff. Id.
¶ 8 The question of law presented to the Oklahoma Court of Civil Appeals was who was financially responsible for the arrestee's medical treatment. Id. The Department of Public Safety argued the county should be liable, because it had a duty under Title 22, Section 1115.2 to receive custody of the prisoner. Id. In its analysis the court stated, "Because [the prisoner] was not eligible for release on his personal recognizance, County had a duty to accept custody of [the prisoner]." Id. However, the court concluded that the "County's duty to accept custody of this prisoner did not arise until that custody was tendered." Id. Therefore, the court held that the responsibility for the prisoner's medical treatment fell upon the Department of Public Safety. Id. at 673.
¶ 9 Osteopathic Hospital Founders held that Title 22, Section 1115.2 imposes a duty upon a county to accept a prisoner when the prisoner is not eligible to be released upon his own recognizance. Id. at 672. Section 1115.2 is part of the State and Municipal Traffic Bail Bond Procedure Act, 22 O.S. 2001, §§ 1115[22-1115] through 1115.5. This Act governs the procedure to be followed by officers making arrests for traffic violations.
¶ 10 Title 22 O.S. 2001, § 1115.2[22-1115.2] provides in pertinent part:
 B. If the defendant is not eligible for release upon personal recognizance as provided for in Section 2 of this act, or if eligible but refuses to sign a written promise to appear, the officer shall deliver the person to an appropriate magistrate for arraignment and the magistrate shall proceed as otherwise provided for by law. If no magistrate is available, the defendant shall be placed in the custody of the appropriate municipal or county jailor or custodian, to be held until a magistrate is available or bail is posted as provided for in Section 4 of this act or as otherwise provided for by law or ordinance[.]
Id.
¶ 11 This statute places a duty upon the "county jailor or custodian" to accept custody of a prisoner who has been arrested for a state law violation and is awaiting the availability of a magistrate. The public trust in your question functions as the "county jailor or custodian." Therefore, a public trust operating a county jail must accept prisoners when required to do so by Section 1115.2(B).
¶ 12 In addition to Section 1115.2, other statutes impose a duty to accept prisoners.
Title 57 O.S. 2001, § 42[57-42] provides:
 The common jails in the several counties in the charge of the respective sheriffs, shall be used as prisons:
 1. For the detention of persons charged with offenses, and duly committed for trial.
 2. For the detention of persons who may be duly committed, to secure their attendance as witnesses on the trial of any criminal cause.
 3. For the confinement of persons pursuant to a sentence, upon a conviction for an offense and of all other persons duly committed for any cause authorized by law.
 4. For the confinement of persons who may be sentenced to imprisonment in the state prison, until they shall be removed thereto.
Id.
¶ 13 The Attorney General previously opined that subsection (1) of this statute requires the sheriff to accept a prisoner if the district attorney has filed state criminal charges. A.G. Opin. 84-93, 163; A.G. Opin. 01-12, 56. Prior to formal charges being filed, the Attorney General said that "[r]esponsibility for the detention of state law violators arrested by municipal policemen . . . is a matter to be resolved between municipal and county authorities." A.G. Opin. 84-93, 163; A.G. Opin. 01-12, 56-57.
¶ 14 A literal reading of the statute would limit its applicability to only those jails "in the charge of the respective sheriffs," and its requirements would not apply to jails operated by a public trust or a private prison contractor. 57 O.S. 2001, § 42[57-42]. This is an absurd result not intended by the Legislature. "The legislature will not be presumed to have intended an absurd result, and a statutory construction which would lead to an absurdity will be avoided if this can be done without violating the legislative intent."Grand River Dam Auth.v. State, 645 P.2d 1011, 1019 (Okla. 1982) (footnotes omitted). Title 57 O.S. 2001, § 42[57-42] was enacted in 1910, 77 years before the Legislature enacted the privatization statutes by amending 57 O.S. 2001, § 41[57-41] and enacting 19 O.S. 2001, § 744[19-744]. See R.L. 1910 ch. 59, art. I, §§ 4579, 4580; 1987 Okla. Sess. Laws ch. 80, §§ 6, 7. At the time of the statute's enactment all county jails were operated by sheriffs. See 57 O.S. 2001, § 42[57-42]. The purpose of the statute was to identify which persons must be held in county jails. See id. Furthermore, the Oklahoma Supreme Court held that the Legislature intended for the laws governing county jails to apply uniformly and irrespective of the entity that operates the facility. Tulsa II, 995 P.2d at 1129. Therefore, a public trust operating a county jail must accept prisoners when required to do so by 57 O.S. 2001, § 42[57-42].
¶ 15 The following statutes require prisoners arrested for non-bailable offenses[5] to be held by sheriffs (or prison contractors, if the sheriff has contracted for the custody of prisoners in the county).
¶ 16 Title 22 O.S. Supp. 2003, § 190.1[22-190.1] provides:
 The person, when arrested without warrant for an offense not bailable, shall be held in custody by the sheriff of the county in which the arrest was made. If the sheriff has contracted for the custody of prisoners in the county, the contractor shall be required to hold in custody any prisoner delivered to the contractor pursuant to this section.
Id.
¶ 17 Title 22 O.S. Supp. 2003, § 459[22-459] provides:
 The defendant, when arrested under a warrant for an offense not bailable, shall be held in custody by the sheriff of the county in which the indictment or information is filed. If the sheriff has contracted for the custody of prisoners in the county, such contractor shall be required to hold in custody any prisoner delivered to the contractor pursuant to this section.
Id.
¶ 18 This duty to hold prisoners is placed upon sheriffs or contractors by virtue of their function as custodians of the jail. The statutes do not expressly apply to employees of a public trust operating a county jail. However, the duties to accept prisoners imposed by 22 O.S. Supp. 2003, §§ 190.1[22-190.1] and 459 also apply to county jails operated by a public trust, because the public trust has assumed the function of jail custodian. Therefore, a public trust operating a county jail must accept prisoners when required to do so by 22 O.S. Supp. 2003, §§ 190.1[22-190.1] and 459.
¶ 19 The Uniform Criminal Extradition Act, 22 O.S. 2001, §§ 1141.1[22-1141.1] through 1141.30, also imposes a duty to accept prisoners in certain situations. Section 1141.12 provides:
 The officer or persons executing the Governor's warrant of arrest, or the agent of the demanding state to whom the prisoner may have been delivered may, when necessary, confine the prisoner in the jail of any county or city through which he may pass; and the keeper of such jail must receive and safely keep the prisoner until the officer or person having charge of him is ready to proceed on his route, such officer or person being chargeable with the expense of keeping.
 The officer or agent of a demanding state to whom a prisoner may have been delivered following extradition proceedings in another state, or to whom a prisoner may have been delivered after waiving extradition in such other state, and who is passing through this state with such a prisoner for the purpose of immediately returning such prisoner to the demanding state may, when necessary, confine the prisoner in the jail of any county or city through which he may pass; and the keeper of such jail must receive and safely keep the prisoner until the officer or agent having charge of him is ready to proceed on his route, such officer or agent, however, being chargeable with the expense of keeping; provided, however, that such officer or agent shall produce and show to the keeper of such jail satisfactory written evidence of the fact that he is actually transporting such prisoner to the demanding state after a requisition by the executive authority of such demanding state. Such prisoner shall not be entitled to demand a new requisition while in this state.
Id.
¶ 20 This statute requires the keeper of a county jail to receive a prisoner who is being transported for purposes of extradition. A public trust operating a county jail is obligated to receive these prisoners because it functions as the keeper of the jail.
 The Common Law Obligation To Accept Prisoners
¶ 21 The Attorney General has previously opined that the office of sheriff carries "all the common law powers and duties [with it], except as modified by the State Constitutions and by statutes." A.G. Opin. 85-27, 62 (citation omitted). This is because "[t]he common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma[.]" 12 O.S. 2001, § 2[12-2].
¶ 22 In Commentaries on the Laws of England, Sir William Blackstone observed that the common law power and duty of the sheriff to act may be separated into four categories. "These are either as a judge, as the keeper of the king's peace, as a ministerial officer of the superior courts of justice, or as the king's bailiff." 1 William Blackstone, Commentaries * 331. For purposes of your question, we are only concerned with the duties of the sheriff to act as "the keeper of the king's peace" and as "a ministerial officer of the superior courts of justice." Id.
¶ 23 As a "keeper of the king's peace," the sheriff "may apprehend, and commit to prison, all persons who break the peace, or attempt to break it: and may bind any one in a recognizance to keep the king's peace. He may, and is bound ex officio to, pursue and take all traitors, murderers, felons, and other misdoers, and commit them to jail for safe custody." Id. at * 332. As a "ministerial officer of the superior courts of justice," the sheriff "arrests and imprisons," and "has the custody of the delinquent" in criminal matters. Id. at * 333.
¶ 24 The common law recognized inferior officers under the sheriff that aided him in the execution of these duties. Id.
Among those inferior officers is the gaoler or jailer. Blackstone states:
 GAOLERS are also the servants of the sheriff, and he must be responsible for their conduct. Their business is to keep safely all such persons as are committed to them by lawful warrant: and, if they suffer any such to escape, the sheriff shall answer it to the king, if it be a criminal matter; or, in a civil case, to the party injured. And to this end the sheriff must have lands sufficient within the county to answer the king and his people.
Id. at 334.
¶ 25 As previously stated, the trust in your question functions as county jailer. It is the equivalent of the common law jailer, and retains the common law duties of the office. Therefore, a public trust operating a county jail must "keep safely all such persons as are committed to them by lawful warrant[.]" Id.
Furthermore, it is required to accept prisoners presented to it by the sheriff when the sheriff is exercising his common law duty to commit certain persons to jail.
¶ 26 In addition to these statutory and common law duties, a public trust may have obligations that arise from the trust instrument or other contracts. The determination of those duties, if any, is a question of fact and not the proper subject of an Attorney General Opinion. 74 O.S. 2001, 18 b(A)(5).
¶ 27 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. A county may form a public trust pursuant to 60 O.S. Supp. 2003, § 176[60-176][6] for the purpose of operating a county jail. Tulsa County Deputy Sheriff's F.O.P., Lodge No. 188 v. Bd. of County Comm'rs, 959 P.2d 979, 981 (Okla. 1998); Tulsa County Deputy Sheriff's F.O.P., Lodge No. 188 v. Bd. of County Comm'rs, 995 P.2d 1124, 1131 (Okla. 2000).
 2. A public trust formed under 60 O.S. Supp. 2003, § 176[60-176] may hire its own employees to operate a county jail. 19 O.S. Supp. 2003, § 339(E).[7]
 3. A county jail operated by a public trust is subject to the same laws and standards as a jail operated by a sheriff, or a private corporation. Tulsa County Deputy Sheriff's, 995 P.2d at 1129.
 4. A county jail operated by a public trust must accept a prisoner when required to do so by law or contract. 21 O.S. Supp. 2003, § 533(A).
 5. A county jail operated by a public trust may not refuse to accept a prisoner on the basis of need for medical treatment when the trust has a duty to receive the prisoner into its custody. 21 O.S. Supp. 2003, § 533(A); Osteopathic Hosp. Founders Ass'n. v. Okla. Dep't of Pub. Safety, 892 P.2d 671, 672 (Okla.Ct.App. 1995).
 6. A county jail operated by a public trust has a duty to accept certain prisoners under 57 O.S. 2001, § 42[57-42]; 22 O.S. 2001, §§ 1115.2, 1141.12; and 22 O.S. Supp. 2003, §§ 190.1, 459.
 7. A county jail operated by a public trust has a duty to receive a prisoner when custody is tendered by the arresting agency. Osteopathic Hosp. Founders Ass'n., 892 P.2d at 672.
 8. A county jail operated by a public trust has a common law duty to accept prisoners committed by lawful warrant presented to it by the sheriff when the sheriff is exercising his common law duty to commit certain persons to jail. 1 William Blackstone, Commentaries **331-334.
 W.A. DREW EDMONDSON Attorney General
 D. CASEY DAVIS Assistant Attorney General
[1] See 2004 Okla. Sess. Law Serv. ch. 5, §§ 48, 49 (several amendments were made to Section 176 in the 2004 Second Regular Session of the Forty-Ninth Legislature; however, they are not germane here).
[2] Important distinctions exist between a public trust created pursuant to 60 O.S. Supp. 2003, § 176[60-176] ("Title 60 Trust"), and a county jail trust authority created under 19 O.S. 2001, §§ 904.1[19-904.1] through 904.10 ("Title 19 Trust"). A Title 19 Trust requires county voter approval for its creation, has the county sheriff as chairperson of the board of directors, has fixed statutory powers and duties, depends primarily on county sales tax revenues (which also must be approved by voters) for its construction and operating costs, and is not a public trust as described in Title 60. See 19 O.S. 2001, §§ 904.1-904.10[19-904.1-904.10]. A Title 60 Trust requires no voter approval for its creation (although the governmental beneficiary must accept beneficial interest), has more flexibility in the powers and duties of its trustees (who are appointed by the governing body of the beneficiary), and has no direct access to tax money for its operation. See 60 O.S. 2001 Supp. 2003, §§ 176-180.4. A Title 60 Trust is a special type of charitable trust. Harrison v. Barton, 358 P.2d 211, 220
(Okla. 1960). The trust you describe is a Title 60 Public Trust, having a county as its beneficiary.
[3] See 2004 Okla. Sess. Law Serv. ch. 5, §§ 5, 6 (several amendments were made to Section 339 in the 2004 Second Regular Session of the Forty-Ninth Legislature; however, they are not germane here).
[4] The jail privatization statutes are found at 19 O.S. 2001, § 744[19-744] and 57 O.S. 2001, § 41[57-41].
[5] Article II, Section 8(A) of the Oklahoma Constitution provides:
 All persons shall be bailable by sufficient sureties, except that bail may be denied for:
 1. capital offenses when the proof of guilt is evident, or the presumption thereof is great;
2. violent offenses;
 3. offenses where the maximum sentence may be life imprisonment or life imprisonment without parole;
 4. felony offenses where the person charged with the offense has been convicted of two or more felony offenses arising out of different transactions; and
 5. controlled dangerous substances offenses where the maximum sentence may be at least ten (10) years imprisonment.
On all offenses specified in paragraphs 2 through 5 of this section, the proof of guilt must be evident, or the presumption must be great, and it must be on the grounds that no condition of release would assure the safety of the community or any person.
[6] See 2004 Okla. Sess. Law Serv. ch. 5, §§ 48, 49 (several amendments were made to Section 176 in the 2004 Second Regular Session of the Forty-Ninth Legislature; however, they are not germane here).
[7] See 2004 Okla. Sess. Law Serv. ch. 5, §§ 5, 6 (several amendments were made to Section 339 in the 2004 Second Regular Session of the Forty-Ninth Legislature; however, they are not germane here).